Patrick Michael SIMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–86–00902–CR.

Court of Appeals of Texas,
Dallas.

July 28, 1987.

Charles W. Tessmer, Dallas, for appellant.

Leslie McFarlane, Dallas, for appellee.

Before WHITHAM, BAKER and LAGARDE, JJ.

LAGARDE, Justice.

Patrick Michael Sims appeals from his conviction for driving while intoxicated. Punishment was assessed at thirty days confinement in the Dallas County jail and a $400 fine. We affirm.

In his first point of error, appellant contends that the trial court erred in overruling his exception to the information and in refusing to submit to the jury special verdict forms. The information charged that appellant:

did then and there drive and operate a motor vehicle in a public place in Dallas County, Texas, to-wit: a street and highway, while intoxicated, in that the defendant did not have the normal use of his mental and physical faculties by reason of the introduction of alcohol, into defendant's body, and defendant had an alcohol concentration of at least 0.10.

Appellant contends that the information improperly alleged two offenses in a single count and that the information, therefore, should have been quashed. He also contends that separate verdict forms should have been submitted to the jury, one asking whether the jury found beyond a reasonable doubt that appellant was intoxicated in that he did not have normal use of his mental or physical faculties and another asking whether the jury found beyond a reasonable doubt that appellant had an alcohol concentration of at least 0.10. No error is shown.

Article 6701*l*–1(b) of the Texas Revised Civil Statutes provides that a person commits an offense if the person is intoxicated while driving or operating a motor vehicle in a public place. Tex.Rev.Civ.Stat. Ann. art. 6701*l*–1(b) (Vernon Supp.1987). "Intoxicated" is defined as:

(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the body; or

(B) having an alcohol concentration of 0.10 or more.

Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1(a)(2)(A) & (B) (Vernon Supp.1987). Thus, although the statute provides two ways by which the offense can be proven, only one act is proscribed: driving while intoxicated. *See Russell v. State*, 710 S.W.2d 662, 663–64 (Tex.App.—Austin 1986, pet. ref'd). Where a statute sets forth several ways by which an offense may be committed, they may be charged conjunctively in one count in the indictment or information. *Sidney v. State*, 560 S.W.2d 679, 681 (Tex.Crim.App. 1978); *Garcia v. State*, 537 S.W.2d 930, 932 (Tex.Crim.App.1976); *Salazar v. State*, 687 S.W.2d 502, 504 (Tex.App.—Dallas 1985, pet. ref'd). Thus, the trial court did not err in refusing to quash the information.

Nor was appellant entitled to submission of special verdict forms. Texas law requires that the verdict in criminal actions be general, *see* Tex.Code Crim.Proc.Ann.

art. 37.07, § 1(a) (Vernon 1981), and, other than in capital murder cases, a court has no authority to submit special issues to a jury in a criminal case. *See Stewart v. State,* 686 S.W.2d 118, 124 (Tex.Crim.App.1984). Thus, where, as here, the charging instrument alleges conjunctively different ways of committing an offense and the jury is charged disjunctively, a general verdict finding a defendant guilty as charged in the indictment is proper and will support a conviction under either theory which is supported by the evidence. *See Vasquez v. State,* 665 S.W.2d 484, 486–87 (Tex.Crim. App.1984); *Reardon v. State,* 695 S.W.2d 331, 333–34 (Tex.App.—Houston [1st Dist.] 1985, no pet.). Accordingly, we overrule appellant's first point of error.

 In his second point of error, appellant contends that the trial court erred in admitting into evidence a videotape made after his arrest because the state failed to lay a proper predicate for admission. A proper predicate for admissibility of a sound recording requires: (1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement. *Edwards v. State,* 551 S.W.2d 731, 733 (Tex.Crim.App.1977); *McEntyre v. State,* 717 S.W.2d 140, 146 (Tex.App.— Houston [1st Dist.] 1986, no pet.). The same requirements have been applied to videotapes. *Roy v. State,* 608 S.W.2d 645, 649 (Tex.Crim.App.1980). Before the videotape was played, Officer Baker, who was present during the videotaping but was not the operator of the machine, testified that the recording machine was "basically a VCR", that it was capable of making an accurate recording, that the videotape truly and accurately represented the videotaping session, that no changes, alterations, or

deletions had been made in the videotape, that all voices on the videotape were identified, that, when appellant refused to waive his *Miranda*[1] rights, he was asked no further questions about the offense, and that, after the videotaping was completed, "Officer Hargis removed the tape from the machine and gave it to me and I put it in this box ... and then it's put into a locked box there in Lew Sterrett."

Appellant attacks the adequacy of the predicate laid on two grounds. First, he contends that the state failed to show that Hargis, whom Baker testified was the videotape machine operator, was competent to operate the machine. We agree that the state failed to produce direct evidence that Hargis was competent to operate the videotape machine. Hargis testified that he was a qualified intoxilyzer operator, but he did not testify concerning his ability to operate the videotape machine. Baker testified that Hargis was "a competent operator" of the machine; however, appellant's objection to this testimony was sustained and the state failed to present other evidence to satisfy this prong of *Edwards.* Nevertheless, as pointed out in *Roy,* videotapes convey a greater indicia of reliability than either film or sound tapes standing alone and at least some of the predicate requirements may be inferred from the testimony. *Roy,* 608 S.W.2d at 645. *See Edwards,* 551 S.W.2d at 733 ("at least some of the [predicate] requirements can be inferred from the testimony ... [f]or example, if a person who is in a position to hear a conversation testifies that he made a tape recording of that conversation and found it to coincide with what he heard the parties say, then it goes without saying ... that the 'operator of the device was competent' "). In the present case, the testimony outlined above was sufficient evidence from which the trial court could infer that Hargis was competent to operate the videotape machine. Thus, the state did not fail to lay a proper predicate for admission of the videotape into evidence in this regard.

 Appellant also contends that because Baker was not the videotape machine

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

operator, his testimony was inadequate to satisfy the remaining requirements for a proper predicate to admission of the video-tape. We disagree. Motion pictures and photographs are admissible provided there is proof of their accuracy as a correct representation of the subject at a given time and provided they have material relevance to a disputed issue. *Darden v. State,* 629 S.W.2d 46, 48–49 (Tex.Crim.App.1982). The witness who verifies such exhibits need not be the photographer, nor need he have any knowledge concerning the way in which the photograph was made. *Darden,* 629 S.W.2d at 49. Because it is the accuracy and relevancy of an exhibit which is at issue in determining its admissibility, we see no reason why the *Darden* holding should not be applied to videotapes as well. Accordingly, we hold that, even though Baker was not the videotape machine operator, he was qualified to establish the predicate for admissibility of the videotape and there is no requirement that the videotape machine operator himself establish the predicate for admissibility. We overrule appellant's second point of error.

■ In his third point of error, appellant contends that the trial court erred in "failing to enforce appellant's *Miranda* right to terminate the video/audio taped interview." [2] He argues that once he expressed his desire to speak with an attorney during the videotaping session after his arrest, the videotaping session should have been terminated and, because it was not, the trial court erred in admitting the videotape into evidence and playing it before the jury at trial. The videotape [3] shows that the appellant was taken into the videotaping room, asked to state his name, and was then given the *Miranda* warnings. Appellant acknowledged that he understood his rights. The police officer then asked appellant for his address and appellant responded by asking "Do I need my attorney for that?" The police officer responded "No, these are just basic questions" and proceeded to ask appellant his height, weight, place of birth, nicknames, social security number, employer, employer's address, and whether appellant was sick, injured, diabetic or epileptic, or whether appellant had false teeth, a glass eye, any artificial limbs, or other physical impairments. The police officer also asked appellant when he last ate, what he ate, the date, day, and time. After appellant answered these questions, the police officer asked if appellant would waive his rights and answer questions concerning the offense. Appellant responded that he would not and no questions concerning the offense were asked.

In his argument under this point of error, appellant contends that the "personal data" questions "are as indicative [of] being under the influence [of alcohol] as direct questions ... not only are they designed to eliminate defensive evidence ... but [they also permit] the viewer to decide the question of intoxication on appellant's manner of speaking, that is, hesitation, thick tongue and slurred speech ... swaying, difficulty in walking and standing, or other displayed coordination or lack thereof."

We must resolve, initially, the question of whether a defendant may, by invoking his *Miranda* rights, require the police to cease videotaping a session such as this.

2. Appellant does not contend that he was entitled to consult with an attorney in deciding whether to provide a breath sample, *see Forte v. State,* 707 S.W.2d 89, 91–93 (Tex.Crim.App. 1986), nor does appellant contend that his rights under *Miranda* and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), were violated when the police continued to ask appellant for a breath sample despite his request for counsel. *See McCambridge v. State,* 712 S.W.2d 499, 503–507 (Tex.Crim.App.1986).

3. Although the videotape was not initially included in the record before us, appellant, in his designation of material to be included in the record, timely requested inclusion of "the exhibits filed during the pre-trial, trial and post-trial proceedings". *See* Tex.R.App.P. 51(b); *cf. Durrough v. State,* 693 S.W.2d 404, 405 (Tex.Crim. App.1985) (under former article 40.09, § 1 of the Texas Code of Criminal Procedure, "exhibits are part of the appellate record which shall be included, whether designated or not"). Accordingly, we have exercised our authority under rule 51(d) of the Texas Rules of Appellate Procedure and have directed the clerk of the trial court to provide the original videotape for our inspection.

It is well-settled that only evidence that "testimonially incriminates" a defendant is protected by the fifth amendment, *Schmerber v. California*, 384 U.S. 757, 765, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966), and compulsion which makes the accused a source of real or physical evidence does not violate the fifth amendment. *Schmerber*, 384 U.S. at 764, 86 S.Ct. at 1832. Evidence such as a person's voice, demeanor, or physical characteristics is outside the scope of protection against self-incrimination. *See McInturf v. State*, 544 S.W.2d 417, 420 (Tex.Crim.App.1976) *quoting Moulton v. State*, 486 S.W.2d 334, 337 (Tex.Crim.App. 1972). Thus, appellant's complaint that permitting the viewer to determine the question of intoxication based on appellant's manner of speaking and lack of coordination concerns precisely the type of evidence which the fifth amendment does not protect. *Granberry v. State*, No. B14–85–815–CR (Tex.App.—Houston [14th Dist.], June 18, 1987, no pet.) (not yet reported) (coordination tests are non-testimonial, thus *Miranda* may be used to exclude only verbal testimony); *Delgado v. State*, 691 S.W.2d 722, 723–24 (Tex.App.—San Antonio 1985, no pet.) (videotape of defendant performing field sobriety test shown at trial with audio portion deleted was non-testimonial and outside the scope of fifth amendment protection). *See also Housewright v. State*, 225 S.W.2d 417 (Tex.Crim.App.1949) (admission into evidence of "moving pictures" of defendant made after his arrest for driving while intoxicated did not violate constitution because "witnesses could delineate the peculiarities of appellant at the scene of the alleged offense and his demeanor and actions in order to give a basis of their opinion as to his intoxicated condition; and it seems to us to be but a clearer delineation of what they saw ... if such a scene could thus be shown by a series of pictures taken immediately after [defendant's] apprehension instead of the eyewitnesses testifying only from memory"). Thus, we hold that no *Miranda* violation occurred when the police continued to videotape appellant after he requested the assistance of counsel and we further hold that in the present case no *Miranda* violation occurred when the trial court permitted the jury to view the video portion of the videotape. Accordingly, we will address the question of whether the trial court erred in permitting the jury to hear the audio portion of the videotape once appellant sought the assistance of counsel.[4]

In *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the Supreme Court characterized the *Miranda* holding as a "rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth amendment rights, requiring that all interrogation cease." *Fare*, 442 U.S. at 719, 99 S.Ct. at 2569. Accordingly, the Court has held that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation. *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981). The threshold question to be determined, therefore, is whether the complained-of evidence stems from custodial interrogation.

Questioning which is normally attendant to arrest and custody is not interrogation from which a defendant is entitled to protection under the fifth amendment. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); *McCambridge*, 712 S.W.2d at 505. In the present case, the questions by the police asking appellant his name, address, telephone number, and place of employment fall within those types of questions which are normally attendant to arrest and custody and are not interrogation protected by the fifth amendment. Accordingly, no fifth amendment violation is shown by the asking of such questions.

In addition, we hold that the questions concerning appellant's physical condition, such as whether appellant was sick, in-

---

**4.** The record reflects that, at trial, the audio portion of the videotape was turned off at the point where the officer stated the result of the intoxilyzer test. Thus, the question of whether the jury should be permitted to hear this portion of the videotape is not before us.

jured, diabetic, or epileptic, and whether appellant had any physical disabilities or impairments, are questions of legitimate concern to the police at any time a person is arrested and taken into custody because the police will be responsible, to some degree, for the arrested person's care and physical well-being. Because of this legitimate concern, we hold that such questions are also among those types of questions normally attendant to arrest and custody, and are not interrogation protected by the fifth amendment.

We conclude, however, that the questions concerning what and when appellant last ate and asking appellant to state the date, day, and time were interrogation subject to fifth amendment protection and that the asking of such questions after appellant sought the assistance of counsel violated appellant's rights under the fifth amendment. The term "interrogation" under *Miranda* refers to words, actions, or questioning on the part of the police that the police should know are reasonably likely to elicit an incriminating response. *Innis*, 446 U.S. at 301, 100 S.Ct. at 1689. "Incriminating response" refers to any response—whether inculpatory or exculpatory—that the prosecution *may* seek to introduce at trial. *Id.* 100 S.Ct. at 1690 n. 5.

While, ordinarily, questions such as "when did you last eat" and "what did you eat" might not reasonably be expected to elicit an incriminating response, in the prosecution of an offense for driving while intoxicated such factors may become relevant to the state in attempting to prove the case, due to the effect of such factors on the alcohol concentration level of the defendant[5] and on the defendant's ability to maintain normal use of his mental and physical faculties. In addition, we can see no reason why a person in custody would be asked to state the date, day, and time, other than to test his mental faculties and his orientation to time and place. While these factors might be completely innocuous upon an arrest for another type of crime, in a driving while intoxicated case these questions, if answered incorrectly, may provide the police with the very evidence that the state may be required to prove: that the defendant did not have normal use of his mental faculties. Thus, we hold that the questions concerning when and what appellant last ate and asking the date, day, and time were interrogation within the protection of the fifth amendment.

We hold, however, that any error in permitting the jury to hear the questions and appellant's answers concerning what and when appellant last ate was cured when appellant himself introduced such evidence at trial. Appellant called as a witness Jack Rosser, who testified that he ate lunch with appellant at 4:00 p.m. on the date prior to appellant's early morning arrest. When a defendant offers the same testimony as that objected to, he cannot complain on appeal of the admission of that testimony.[6] *Maynard v. State*, 685 S.W.2d 60, 65 (Tex.Crim.App.1985); *Womble v. State*, 618 S.W.2d 59, 62 (Tex.Crim.App. 1981). Thus, no error is shown by permitting the jury to hear this portion of the videotape.

Finally, we hold that error in permitting the jury to hear the police officer's questions and appellant's answers concerning the date, day, and time was harmless

---

5. Although none of the expert witnesses testified directly concerning the effect of food on the alcohol concentration level, hypothetical questions at trial included assuming that the person did not eat while consuming certain amounts of alcohol. In addition, one expert witness testified that "a person on a prolonged fast such as a zero carbohydrate diet ... [may not be] actually intoxicated on alcohol, but intoxicated on acetone" generated by the body. Thus, it appears that eating, or failing to eat, while consuming alcohol has at least some effect on the alcohol concentration level of the body.

6. The corollary to this rule that the harmful effect of improperly admitted evidence is not cured by the fact that a defendant seeks to meet, destroy, or explain it by the introduction of rebutting evidence, *see Maynard*, 685 S.W.2d at 65, is not applicable here. Rosser's testimony did not meet, destroy, or rebut appellant's answers on the videotape to the questions concerning when and what he last ate. Instead, Rosser's testimony was *entirely consistent with appellant's answers.*

beyond a reasonable doubt. *See* Tex.R. App.P. 81(b)(2). Because appellant answered each of these questions correctly, appellant's defense could only have been helped when the jury heard this portion of the videotape, because it served to demonstrate that appellant had normal use of his mental faculties. Accordingly, we overrule appellant's third point of error.

 In his fourth point of error, appellant contends that the trial court erred in failing to submit to the jury his requested instruction regarding certification of the breath testing machine and the machine operator and the techniques used in administering the test. *See* Tex.Rev.Civ.Stat. Ann. art. 6701*l*-5, § 3(b) & (c) (Vernon Supp.1987). At trial, appellant objected to the admissibility of the test results on the basis that there was no evidence that the breath test machine operator followed the procedures outlined by the scientific director of the Texas Department of Public Safety and that the machine operator's certificate of qualification to operate the machine was the best evidence of the operator's qualifications. Each of these objections were properly overruled. Nevertheless, appellant contends that he was entitled to a jury instruction concerning compliance with section 3 of article 6701*l*-5 of the Texas Revised Civil Statutes. We disagree. In *Moseley v. State*, 696 S.W.2d 934 (Tex.App.—Dallas 1985, pet. ref'd), this court held that, in the absence of a fact issue concerning whether the test was performed according to the methods approved by the Department of Public Safety, a defendant is not entitled to an instruction submitting this issue to the jury. *Moseley*, 696 S.W.2d at 937. Although appellant contends in his brief that a fact issue existed concerning compliance with section 3 of article 6701*l*-5, he has not cited where in the record such evidence can be found. Accordingly, appellant has waived any error. *See Cook v. State*, 611 S.W.2d 83, 87 (Tex.Crim.App.1980); Tex.R.App.P. 74(f). We overrule appellant's fourth point of error.

 Appellant's complaint under his fifth point of error is unclear. Appellant contends that he was denied his "right to counsel" when the trial court refused to permit appellant's attorney's paralegal to sit at the counsel table during trial, but he emphasizes that he "is not complaining that he was denied effective assistance of counsel." In any event, paralegal was permitted to remain in the courtroom during the proceedings and appellant cites no authority that would require the trial court to permit non-lawyer personnel to sit at the counsel table. Accordingly, we overrule appellant's fifth point of error.

The trial court's judgment is affirmed.

WHITHAM, J., dissents.

WHITHAM, Justice, dissenting.

I respectfully dissent. I would sustain appellant's fourth point of error and reverse and remand for the reasons expressed in my dissenting opinion in *Moseley v. State*, 696 S.W.2d 934 (Tex.App.—Dallas 1985, pet. ref'd).