James G. BRANCH, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–94–00066–CR.

Court of Appeals of Texas,
Tyler.

Nov. 30, 1995.

William M. House, Palestine for appellant.

Pamela Foster, Palestine for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

RAMEY, Chief Justice.

This is an appeal from a conviction for the offense of Driving While Intoxicated. A jury assessed punishment for the offense at confinement for one year, to be probated for two years. The jury also required the Appellant, James G. Branch ("Branch"), to serve ten days in jail as a condition of probation and pay a fine of $1,500. We will affirm the conviction.

Just before midnight on October 9, 1992, two state troopers stopped Branch in Anderson County for speeding and the suspected offense of driving while intoxicated. After having Branch perform certain field sobriety tests and determining he was intoxicated, they took him to the jail to record more sobriety tests and the reading of his rights on video tape. He refused to participate in tests of his physical coordination, but he agreed to recite the alphabet, which he managed to complete correctly on his second attempt. After the arresting officer read the Miranda[1] warning and the warnings concerning the breathalyzer test, Branch refused to take the breath test as well. The jury was permitted to view the video tape in its entirety, but certain parts of the audio portion of the tape were redacted in accordance with Branch's motion to suppress; nevertheless, the jury heard Branch's voice when he refused each of the tests and when he acknowledged that he had understood the Miranda warning. The tape also included several questions asked by the officer (and Branch's responses) regarding such matters as when Branch had last eaten and whether he had been drinking (to which Branch answered, "drank a beer").

In the first of five points of error, Branch contends that the trial court erred in admitting the video tape into evidence in violation of Article 38.22(3)(a)(5) of the Texas Code of

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Criminal Procedure, which provides that an electronic recording of a custodial interrogation may not be admitted into evidence unless the prosecution gives "a true, complete, and accurate copy of all recordings of the defendant" to the defense attorney not later than twenty days prior to the trial or other proceeding in which the recording is to be used. TEX.CRIM.PROC.CODE art. 38.22(3)(a)(5) (Vernon Supp.1995). The State argues that the videotape was admissible regardless of the fact that Branch's attorney did not timely receive a copy because the questioning of Branch during the session did not amount to interrogation.

■ The Supreme Court has stated that for the purposes of Fifth Amendment protection, the term "custodial interrogation ... mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444 and 478, 86 S.Ct. at 1612 and 1630. Interrogation in such circumstances can include not only express questioning of a suspect, but "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response...." *Jones v. State,* 795 S.W.2d 171, 174 (Tex.Cr.App.1990), *quoting, Rhode Island v. Innis,* 446 U.S. 291, 300–302, 100 S.Ct. 1682, 1689–1690, 64 L.Ed.2d 297, 307–308 (1980); *accord, Miranda,* 384 U.S. at 467, 86 S.Ct. at 1624.

■ Questions intended merely to aid record keeping procedures in an arrest situation, such as those seeking information regarding name, address, place of employment and the like, do not fall within this definition of custodial "interrogation." *Jones,* 795 S.W.2d at 174; *Sims v. State,* 735 S.W.2d 913, 918 (Tex.App.—Dallas 1987, pet. ref'd). Likewise, a suspect's decision to take or refuse a breath test and the question prompting that decision do not constitute custodial interrogation, nor do they involve the constitutional privilege against self-incrimination. *McCambridge v. State,* 712 S.W.2d 499, 506 (Tex.Cr.App.1986), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990). In

support of this assertion, the State cites the recently repealed Article 6701l-5 of the Revised Civil Statutes of Texas, which was in effect at the time of Branch's arrest and trial and which provided in relevant part as follows: "[i]f the person refuses a request by an officer to give a specimen of breath or blood, whether the refusal was express or the result of an intentional failure of the person to give the specimen, that fact may be introduced into evidence at the person's trial." Act of June 16, 1983, 68th Leg., ch. 303 § 4, 1983 TEX.GEN.LAWS 1584, *repealed by* Act of June 19, 1993, 73rd Leg., ch. 900, § 1.15, 1993 TEX.GEN.LAWS 3704. Neither does the ambit of custodial interrogation include certain other sobriety tests, such as those aimed at revealing impaired physical coordination, memory, or speech, when such tests do not call for potentially incriminating, testimonial responses. *Jones,* 795 S.W.2d at 175–176; *Chadwick v. State,* 795 S.W.2d 177 (Tex.Cr. App.1990) (recitation of alphabet is not testimonial in nature); *Sims,* 735 S.W.2d at 917.

■ A review of the video tape at issue in this case reveals that the state trooper asked Branch to recite the alphabet, perform tests of his physical coordination, which he refused, and to take a breathalyzer test, which he also refused. For the reasons just detailed, we hold that these questions and responses did not constitute interrogation.

We note, however, that another appellate court recently addressed this issue and held that requiring a suspect to recite the alphabet from "f" to "w" and to count backwards from ninety to seventy-five called for responses that were testimonial in nature and that those responses should not have been admitted into evidence when the suspect had not been advised beforehand of his rights under *Miranda. Vickers v. State,* 878 S.W.2d 329, 330 (Tex.App.—Fort Worth 1994, pet. ref'd). The *Vickers* court relied on the Supreme Court's holding in *Pennsylvania v. Muniz,* 496 U.S. 582, 598–600, 110 S.Ct. 2638, 2649, 110 L.Ed.2d 528, 550–551 (1990), that a DWI suspect's responses to a question requiring him to calculate the date of his sixth birthday should have been suppressed because they revealed that his mind was confused and therefore were testimonial

in nature. Here, the trooper asked Branch to recite the alphabet before reading the *Miranda* warning to him, but he did not ask Branch to change the order of it or skip any letters. In short, the trooper's question amounted to a test of Branch's long-term memory and could not have led to any confusion on his part as the questions discussed in *Vickers* and *Muniz* might have. We hold that the facts of the instant case are distinguishable from those of *Muniz* and that requesting the mere recitation of the alphabet does not constitute interrogation.

█ The trooper also inquired about Branch's physical condition, asking whether he suffered from any physical maladies such as diabetes, epilepsy or bodily injuries. Such questions are necessary in arrest situations to enable authorities to provide for and be aware of any special physical needs a suspect might have; they are the types of questions that normally attend an arrest or custody and are not of a constitutionally suspect interrogative nature. *Sims,* 735 S.W.2d at 917–918.

█ The State's argument fails, however, with regard to certain other questions asked by the trooper. The trooper asked Branch where he had been going at the time he was pulled over, when and what he had last eaten, and whether he had drunk an alcoholic beverage. This inquiry went beyond the scope of that normally attending arrest and custody and amounted to custodial interrogation because the questions asked were "reasonably likely to elicit an incriminating response." *Jones,* 795 S.W.2d at 174. Thus, under the requirements of Article 38.22(3)(a)(5) of the Code of Criminal Procedure, the State should have provided Branch's attorney with a copy of the video tape at least twenty days before trial. The Code expressly provides that subsection (a) of Article 38.22(3) is to be strictly construed and that the courts may not interpret it "as making admissible a statement unless all requirements of the subsection have been satisfied by the state...." TEX.CODE CRIM.PROC. art. 38.22(3)(e) (Vernon Supp.1995). Consequently, we hold that the trial court erred in admitting those portions of the videotape which depicted the custodial interrogation.

█ This holding does not, however, automatically call for reversal. The point of error must still be overruled if the error was harmless; should we conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment, then no harm resulted from the error. TEX.R.APP.P. 81(b)(2). If "the error was of such a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming [that evidence] might have been," reversal is necessary. *Harris v. State,* 790 S.W.2d 568, 588 (Tex.Cr.App.1989). Thus, this court must try to isolate the error and its effects and then consider whether a jury might have come to a different conclusion had the error and effects never occurred. *Id.*

In *Harris,* the Court of Criminal Appeals offered possible lines of inquiry for appellate courts to utilize in isolating the error and its effects. *Id.,* 790 S.W.2d at 587. The reviewing court may examine, among other things, the following: (1) the source and nature of the error, (2) whether the State emphasized it, (3) its probable collateral implications, (4) how much weight a juror would have placed on the error, and (5) "whether declaring the error harmless would encourage the State to repeat it with impunity." *Id.*

█ Here, an analysis based on the guidelines set out in *Harris* reveals no harm to Branch. A close consideration of the nature of the error suggests that the only potentially harmful portion of the erroneously admitted dialogue was that question in which the arresting officer asked Branch if he had been drinking. Branch's response ("drank a beer") is not automatically incriminating in itself since one beer will not render an adult male intoxicated beyond the legal limit under normal circumstances. The State did not emphasize the comment any more than it did any other part of its battery of evidence, in part because the arresting officer testified that when he first pulled Branch over, before the period of custodial interrogation began, Branch volunteered that he had drunk six beers. In fact, Branch's own counsel emphasized the erroneously admitted statement in his closing argument in

order to stress that the odor of "metabolized alcohol" which both of the troopers claimed to have noticed on Branch's breath was due to the one beer that Branch admitted on video tape to having drunk. He argued that the odor of metabolized alcohol proved only that Branch had partaken of a beer earlier in the day and not so recently before the arrest that intoxication could be assumed.

Given the plethora of other evidence of intoxication, the videotaped statement was unlikely to have had any significant collateral implications. Both troopers testified that Branch had trouble with his balance and with walking. The trooper who administered the sobriety tests stated that he had to catch Branch on one occasion when Branch appeared to lose his balance during a sobriety test. Branch was unable to successfully recite the alphabet when he was stopped, and once at the jail, he had to make two attempts to recite it correctly. In light of all this evidence, the videotaped statement wherein Branch claimed he had drunk "a beer" might actually have provided evidence with which to controvert the testimony of the arresting officer that Branch claimed to have had six beers.

Overwhelming evidence can be a factor in determining whether the error contributed to the conviction or punishment. *Harris,* 790 S.W.2d at 588. Here, the State was able to offer a significant amount of evidence that exceeded the erroneously admitted statement in its deleterious effect on Branch's defense; therefore, it is unlikely that the jury placed any significant weight on Branch's videotaped testimony in reaching their verdict.

And finally, we do not believe the State will be encouraged to repeat this error with impunity. In the instant case, the erroneously admitted testimony was not as inculpatory as such testimony is usually likely to be, given the profusion of other, more damaging evidence offered by the State here. Most such cases are likely to involve a greater risk that harm will result from the failure to timely provide a copy of an electronic recording. Also, the avoidance of this type of error requires little effort. The State could have avoided the error in the first place by providing a copy of the video tape to Branch's

attorney at least twenty days before trial. Avoiding the time and expense necessary to defend such an error on appeal is more than ample incentive for the State to comply with Article 38.22.

Having considered these issues, we cannot say, as the *Harris* opinion requires for a showing of harm, that "a rational trier of fact might have reached a different result if the error and its effects had not resulted." Therefore, we hold that the error committed by the trial court in this case was harmless and does not require reversal. TEX.R.APP.P. 81(b)(2). Accordingly, we overrule Branch's first point of error.

█ In his second point of error, Branch contends that the trial court erred in allowing the jury to hear the audio portion of the video tape in which he refused to attempt the requested field sobriety tests. He asserts in his third point of error that the trial court erred in admitting any evidence, recorded or otherwise, of his refusal to take the breathalyzer test. In responding to Branch's first point, we have already noted that the procedural safeguards of a suspect's privilege against self-incrimination detailed in the Supreme Court's *Miranda* decision apply only in situations constituting custodial interrogation. *Miranda,* 384 U.S. at 444 and 478, 86 S.Ct. at 1612 and 1630; *Jones,* 795 S.W.2d at 174.

We begin by reiterating that at the time of Branch's arrest and trial, article 6701*l*-5 § 3(g) of the Revised Civil Statutes of Texas provided that evidence of a person's refusal to give a specimen of breath or blood upon a request by an officer of the law was admissible in evidence at that person's trial. *See also Bass v. State,* 723 S.W.2d 687, 691 (Tex. Cr.App.1986); *McCambridge,* 712 S.W.2d at 506. Branch alleges that the arresting officer did not properly advise him of his rights regarding the breathalyzer test in that the officer told him that the statutory warning was a "bunch of gobbledygook written by lawyers" and that "basically all it said was your license can be suspended if you refuse to take the test." The video tape shows that the officer read the complete statutory warning to Branch and handed him a copy, but Branch complains that the officer's com-

ments misrepresented it, especially that portion of the warning which informs the suspect that his refusal to take the test can be admitted against him in court. Just prior to reading the breathalyzer warning to Branch, however, the officer had read the *Miranda* warning, which also states that anything the suspect says may be used against him in court. The officer did not comment on the meaning of the *Miranda* language.

That portion of the breathalyzer warning having to do with the admissibility of the suspect's refusal is clear and its position at the beginning of the warning allows the suspect to hear it before the more complicated portions having to do with license suspension. It is unlikely that the officer's attempt to help Branch mentally digest the language of the warning could have misled him or *compelled* him to refuse, as is necessary for the refusal to be considered self-incriminating testimony resulting from custodial interrogation. We hold that Branch received sufficient warning that his refusal to submit to the breathalyzer test could be admitted into evidence at his trial, especially in light of the *Miranda* warning he received immediately beforehand.

 Additionally, the fact that Branch refused the breath test came into evidence without objection during the State's direct examination of the trooper who read Branch the statutory warning. Consequently, any error, if it did exist here, was waived. Tex. R.App.P. 52(a); *Hollins v. State,* 805 S.W.2d 475, 476 (Tex.Cr.App.1991). We therefore overrule Branch's third point of error.

Sobriety tests, including physical tests of coordination and tests requiring suspects to read simple texts, generally do not rise to the level of custodial interrogation because they do not require testimonial responses that are potentially incriminating. *Jones,* 795 S.W.2d at 175–176; *Sims,* 735 S.W.2d at 918. In our response to Branch's first point we held that requiring recitation of the alphabet likewise is not protected as potentially self-incriminating. See *Chadwick,* 795 S.W.2d 177.

 If such sobriety tests do not call for potentially incriminating, testimonial responses, as the cited cases and others have held, then it follows that a suspect's refusal to submit to the test does not constitute the type of potentially self-incriminating testimony that would bring constitutional safeguards into play. In fact, as the State has pointed out, some courts of appeals have already addressed the issue and have determined that such a refusal does not amount to custodial interrogation and is admissible in evidence unless there is evidence suggesting that the refusal was somehow coerced. *Dawkins v. State,* 822 S.W.2d 668, 671 (Tex. App.—Waco 1991), *pet. ref'd,* 825 S.W.2d 709 (Tex.Cr.App.1992) (admission of refusal to perform sobriety tests in front of the video camera); *Barraza v. State,* 733 S.W.2d 379, 381 (Tex.App.—Corpus Christi 1987), *aff'd,* 790 S.W.2d 654 (Tex.Cr.App.1990) (admission of testimony that appellant refused to take sobriety tests). There is no evidence here that Branch was compelled to refuse to attempt the sobriety tests, and a review of the video tape reveals Branch to be quite calm in declining to do so. Whenever he stated to the arresting officer that he did not want to take the test, the officer merely proceeded to his next question or request. We hold that the audio portion of the video tape which depicted Branch's refusal to take the sobriety tests was admissible and not a part of the custodial interrogation. Branch's second point of error is overruled.

 Branch's fourth point of error alleges that certain opinion testimony from the arresting officer was erroneously admitted. During his cross examination of the trooper, Branch's attorney asked whether the trooper would have made the video tape of his questions to Branch if Branch had submitted to the breath test. The trooper responded as follows: "probably not … because I know he would have failed it and I would have had him…." Branch's attorney objected at that moment, and the objection was sustained. The trial court then instructed the jury to disregard the statement and denied Branch's motion for a mistrial.

 It is possible that the trooper's answer was brought on by the question directed to him. The State argues that the question impliedly called for the trooper's reasoning as part of his answer and that no

error occurred. Whether this is so, any potential error was cured when the judge sustained the objection and instructed the jury to disregard the response. *See Barnes v. State,* 876 S.W.2d 316, 326–327 (Tex.Cr.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *Stoker v. State,* 788 S.W.2d 1, 13 (Tex.Cr.App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). An instruction to disregard will cure the error except in extreme circumstances where the evidence is "clearly calculated to inflame the minds of the jury and is of such a character as' to suggest the impossibility of withdrawing the impression produced on their minds." *Guzmon v. State,* 697 S.W.2d 404, 408 (Tex.Cr. App.1985), *cert. denied,* 475 U.S. 1090, 106 S.Ct. 1479, 89 L.Ed.2d 734 (1986); *accord, Stoker,* 788 S.W.2d at 13. Here, both troopers involved in Branch's arrest testified that they had no doubt that Branch was intoxicated on the night of his arrest. In fact, the officer's statement could not have revealed anything about his opinion that the jury could not have assumed before any testimony was offered in the trial. The arresting officer *had* to believe Branch was intoxicated; otherwise, no arrest would have taken place, and no trial would have ensued. Also, the statement could have had no more than a minimal impact, if any, on the jury given the abundant other evidence of Branch's intoxication. *See Stoker,* 788 S.W.2d at 13. We hold that in this situation, the trooper's opinion testimony did not create any impression on the jurors' minds that was not cured by the instruction to disregard. We overrule Branch's fourth point of error.

In his fifth and final point of error, Branch contends that the trial court erred during the punishment phase of his trial in admitting into evidence certified copies of his driving record and two prior judgments for DWI convictions without sufficient evidence connecting Branch to the documents. Branch asserts that the State offered no proof at all that the two prior judgments offered as Exhibit Three were his.

■ During direct examination by the State in the punishment phase of trial, the arresting officer identified Branch in the courtroom as the person he had arrested and stated that Branch had shown him his driver's license at that time. The officer recited the driver's license number and date of birth that appeared on Branch's license. The State then Marked its Exhibit Two, the certified copy of Branch's driving record, and had the officer read the name, license number and date of birth from it and declare that all the information was the same as that he had taken from Branch's license on the night of the arrest. The driving record contained Branch's two prior DWI convictions. State's Exhibit Two was offered and admitted into evidence over the objections of Branch's counsel. The State then marked and offered as Exhibit Three certified copies of Branch's two prior DWI convictions, which the trial court admitted, again over Branch's objections. The trial court took judicial notice that the two cause numbers, the convicting court, and the dates of the two convictions shown in Exhibit Three were identical to those shown in Exhibit Two.

Branch cites *Elliott v. State,* 858 S.W.2d 478, 488 (Tex.Cr.App.1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 563, 126 L.Ed.2d 463 (1993), for the proposition that a certified copy of a judgment is insufficient by itself to prove a prior offense. That case is inapplicable here; the certified copies of the judgments offered by the State here did not stand alone but were tied by the driving record and the testimony of the arresting officer directly to Branch. We hold that the arresting officer's testimony and the State's evidence sufficiently established that Branch was the same person named in both exhibits. *See Lopez v. State,* 805 S.W.2d 882, 885 (Tex. App.—Corpus Christi 1991, no pet.). Branch's Fifth point of error is overruled.

Having overruled all of Branch's points of error, we affirm the judgment of the trial court.