**Rodney Roland O'NEAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–98–00085–CR.

Court of Appeals of Texas,
Tyler.

June 28, 1999.

---

Frank R. Hughes, Galveston, for appellant.

Roland Ferguson, Sulphur Springs, for appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

PER CURIAM.

Rodney Roland O'Neal ("Appellant") appeals his conviction of the offense of driving while intoxicated. *See* TEX. PEN.CODE ANN. § 49.04 (Vernon 1994 & Supp.1999). A jury convicted Appellant and the trial court assessed punishment at one-hundred twenty days confinement, probated for a period of two years, and a $500.00 fine. In issue one, Appellant contends that the trial court erred when it failed to suppress oral, unrecorded statements of the Appellant made after arrest. In issue two, Appellant argues that the trial court erred when it charged the jury that it could convict Appellant if it found Appellant possessed an alcohol concentration level of 0.10 or more. We will affirm the judgment of the trial court.

The evidence adduced at trial showed that Officer Joe Hill ("Hill") of the East Tawakoni police department was working the 6:00 p.m. to 2:00 a.m. shift on January 25, 1997. Hill stopped Appellant when Hill observed that one of Appellant's headlights was out. Hill asked for Appellant's identification and insurance. Appellant "fumbled a little bit somewhat through his billfold and digging through his papers" before providing a suspended New York driver's license. Hill then asked Appellant where he had been and Appellant responded that he had been to a "club" called Gilligan's. Hill noted that Appellant's "speech was somewhat slurred" and his eyes were "glazed and bloodshot." Hill also noted a strong odor of alcohol. At that point, Hill conducted three field sobriety tests. Appellant performed poorly on each one of these tests and Hill arrested Appellant on suspicion of driving while intoxicated at 12:26 a.m. Deputy Daymond Weatherford ("Weatherford") then transported Appellant to the Rains County sheriff's office where Weatherford issued the *Miranda*[1] warning and administered an intoxilyzer test, which showed that Appellant's alcohol concentration level was 0.127 at 12:46 a.m. and 0.120 at 12:49 a.m. Both Hill and Weatherford testified that, based on their observations, Appellant was intoxicated.

While Appellant was at the Rains County sheriff's office and after he had been Mirandized, Weatherford asked him a number of questions and wrote down Appellant's responses. These questions derived from a form entitled "Texas Department of Public Safety, DWI Interview, Standardized Field Sobriety Testing." To a question asking whether he had been drinking, Appellant responded, "Yes." When asked what he had been drinking, Appellant stated, "Beer." To a question asking how much he had drank, Appellant responded, "Eight." No audio or visual recording of this conversation was made.

Appellant filed a pre-trial motion to suppress the "oral statements and/or silence of the defendant." In this motion, Appellant argued, in part, that his oral statements to police must be suppressed because they were obtained in violation of TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.1999) since they were not

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

electronically recorded. At trial, the State attempted to introduce the form which contained the above responses as an exhibit and to elicit testimony from Weatherford regarding these questions and answers. Appellant objected to the admissibility of evidence pertaining to Appellant's responses on the grounds stated above. The trial court overruled Appellant's objection, admitted the form and allowed Weatherford to testify concerning it.

In issue one, Appellant contends that the trial court abused its discretion when it failed to suppress the above-statements of Appellant pursuant to TEX.CODE CRIM.PROC. ANN. art. 38.22, § 3(a)(1) (Vernon Supp. 1999), which states as follows:

> Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
>
> (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement ...

TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1). Although the State has not filed a brief, the State argued at trial, essentially, that these questions were part of a routine "arrest and book-in" procedure and, therefore, these questions did not amount to custodial interrogation. Accordingly, the State asserted that because statements not resulting from custodial interrogation do not fall within the requirements of article 38.22, it was not necessary for these statements to be electronically recorded. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 5 (Vernon 1979). Further, the State contended that because the *"Miranda* warning states very plainly that anything you say can and will be used against you," any statement that Appellant made after the warning was admissible notwithstanding article 38.22. We disagree with the State.

■ We do not interpret Appellant's argument to complain of any factual finding made by the trial court. From the record, it appears that the facts relating to the questions and answers referred to above were undisputed. Rather, we interpret Appellant's argument to assert that the trial court misapplied article 38.22, § 3(a)(1) to the facts. We will review the trial court's application of article 38.22, § 3(a)(1) under the abuse of discretion standard. *See Hawkins v. State,* 628 S.W.2d 71, 75 (Tex.Cr.App.1982).

■ "An oral statement of an accused made during a custodial interrogation is generally not admissible against an accused unless an electronic recording is made of the statement." *Howley v. State,* 943 S.W.2d 152, 154 (Tex.App.—Houston [1st Dist.] 1997, no pet.); *see* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1) (Vernon 1979 & Supp.1999). "Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. More specifically, interrogation "under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). The term "incriminating response" refers to "any response— whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial." *Id.* at 301 n. 5, 100 S.Ct. 1682. "A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." *Id.* at 301, 100 S.Ct. 1682; *see McCrory v. State,* 643 S.W.2d 725, 734 (Tex.Cr.App.1982).

Clearly, Appellant was in custody at the time he made these statements. Consequently, the question of whether Appellant's statements were the result of custodial interrogation turns on whether the questions asked by Weatherford amounted to "interrogation." Under section 49.04 of the Penal Code there are "two types of DWI offenses." *See State v. Carter,* 810 S.W.2d 197, 200 (Tex.Cr.App.1991); *Daricek v. State,* 875 S.W.2d 770, 771 (Tex. App.—Austin 1994, pet. ref'd). One is a "loss of faculties" offense. The "loss of faculties" offense may be established by proving that the defendant drove or operated a motor vehicle in a public place while not having the normal use of his mental or physical faculties because of the introduction of alcohol into his body. *See Carter,* 810 S.W.2d at 200; TEX. PENAL CODE ANN. § 49.01 (Vernon 1994). The other is a "per se" offense which may be established by proving that the defendant drove or operated a motor vehicle in a public place while having an alcohol concentration of 0.10 or more in his blood, breath or urine. *Id.*

The questions asked by Weatherford were designed to elicit responses indicating: (1) whether Appellant had been drinking and (2) what Appellant had been drinking and how much he had drank. In light of the elements necessary to establish either DWI offense, these questions were "reasonably likely to elicit an incriminating response" from Appellant.[2] *Innis,* 446 U.S. at 301, 100 S.Ct. at 1689–90; *see Pennsylvania v. Muniz,* 496 U.S. 582, 599–601, 110 S.Ct. 2638, 2649, 110 L.Ed.2d 528 (1990) (holding that a question to a DWI suspect asking him to give the date of his sixth birthday was custodial interrogation

subject to *Miranda* ); *Branch v. State,* 932 S.W.2d 577, 581 (Tex.App.—Tyler 1995, no pet.) (holding that questions to DWI suspect asking where he had been going at the time he was pulled over, what he had last eaten, and whether he had drunk an alcoholic beverage were custodial interrogation); *Sims v. State,* 735 S.W.2d 913, 917 (Tex.App.—Dallas 1987, pet. ref'd) (holding that questions to a DWI suspect concerning what and when the suspect last ate and asking the suspect to state the date, day and time were interrogation subject to the fifth amendment). While it is true that "[q]uestions intended merely to aid record keeping procedures in an arrest situation" do not fall within the ambit of custodial interrogation, the State's characterization of these questions as part of a routine "book-in procedure" is unpersuasive because these questions "went beyond the scope of that normally attending arrest and custody." *Branch,* 932 S.W.2d at 580–81; *see Innis,* 446 U.S. at 301, 100 S.Ct. at 1689–90. Based on the foregoing, we conclude that Appellant's responses to the questions at issue resulted from custodial interrogation.

We also reject the State's contention that Appellant's statements were admissible because Appellant had been given the *Miranda* warnings notwithstanding article 38.22. As indicated above, article 38.22, § 3(a)(1) mandates that an oral statement of an accused made during custodial interrogation is not admissible against the accused unless an electronic recording is made of the statement. *See Almanza v. State,* 839 S.W.2d 817, 818–821 (Tex.Cr.App.1992); *Howley,* 943 S.W.2d at 152; *Wortham v. State,* 704 S.W.2d 586, 588–89 (Tex.App.—Austin 1986, no pet.).

---

2. It is not necessary for us to conclude whether the responses at issue resulted from express questioning or from its "functional equivalent." *See Innis,* 446 U.S. at 300, 100 S.Ct. at 1689. Our determination that the questions at issue were "reasonably likely to elicit an incriminating response" means that

the questions amounted to "interrogation" under *Miranda.* Once this determination has been made, whether the incriminating responses resulted from express questioning or its functional equivalent is a distinction without a difference.

The fact that the *Miranda* warning is issued does not eliminate this requirement. *Id.*; *see Dansby v. State*, 931 S.W.2d 297 (Tex.Cr.App.1996) (holding that appellant's unrecorded, oral statements to arresting officer after he had been Mirandized were not admissible since no exception that statements be recorded applied). For the foregoing reasons, we hold that the trial court abused its discretion when it failed to suppress Appellant's statements referenced herein.

Having determined that the trial court erred in this regard, we must now examine whether the error constitutes reversible error. Under Rule 44.2 of the Texas Rules of Appellate Procedure, the nature of the error controls the standard under which it will be evaluated. *See Easley v. State*, 986 S.W.2d 264, 267 (Tex.App.—San Antonio 1998, no pet.). Constitutional error requires reversal of the judgment or punishment unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* TEX.R.APP. P. 44.2(a). Any other error, defect, irregularity, or variance not affecting substantial rights must be disregarded. *See* TEX. R.APP. P. 44.2(b).

■ Because the improper admission of a statement in response to custodial interrogation implicates the constitutional right against self-incrimination, the trial court's error in this case was constitutional error. *See Jordy v. State*, 969 S.W.2d 528, 532 (Tex.App.—Fort Worth 1998, no pet.); *Brown v. State*, 960 S.W.2d 265, 271 (Tex. App.—Corpus Christi 1997, no pet.); *Easley*, 986 S.W.2d at 267. Accordingly, we will reverse unless the record establishes beyond a reasonable doubt that the statement's introduction did not contribute to Appellant's conviction. *See* TEX.R.APP. P. 44.2(a).

■ As noted above, there are two types of DWI offenses. The jury was charged that it could convict Appellant for either type of DWI offense. With regard to the "loss of faculties" offense, the State presented a significant amount of evidence, which is detailed herein, other than Appellant's statements from which the jury could have concluded that the Appellant drove or operated a motor vehicle in a public place while not having the normal use of his mental or physical faculties because of the introduction of alcohol into his body. Furthermore, the State presented evidence, other than Appellant's statements, from which the jury could have convicted for the "per se" offense as well. Overwhelming evidence can be a factor in determining whether the error contributed to the conviction. *See Branch*, 932 S.W.2d at 582. Moreover, the State did not emphasize Appellant's statements. *Id.* Based on the foregoing and having reviewed the record, we cannot say that "a rational trier of fact might have reached a different result if the error and its effects had not resulted." *Harris v. State*, 790 S.W.2d 568, 588 (Tex.Cr.App.1989). Thus, we conclude beyond a reasonable doubt that the improperly admitted statements did not contribute to Appellant's conviction. Accordingly, issue one is overruled.

In issue two, Appellant contends that the trial court abused its discretion when it charged the jury that it could convict Appellant "if it found a breath test result over .10." According to Appellant, this portion of the charge was error because "the State failed to provide sufficient proof of retrograde extrapolation, absorption and elimination, as is applied to the defendant." We interpret this argument to assert that because the State allegedly did not present sufficient evidence of Appellant's alcohol concentration level at the time of the operation of the motor vehicle, it was error for the court to charge the jury that it could convict Appellant for the "per se" type DWI offense.

■ Although Appellant does not explain what he means by "retrograde ex-

trapolation, absorption and elimination," one court has stated that "[e]xtrapolation evidence explains the correlation between the breath test results and the level of intoxication at the time of the arrest in a given case." *Martin v. Dept. of Public Safety*, 964 S.W.2d 772, 776 (Tex.App.—Austin 1998, no pet.); *see Mireles v. Dept. of Public Safety*, 993 S.W.2d 426, 428 (Tex. App.—San Antonio 1999, no pet. h.) (noting that extrapolation testimony takes into account a defendant's body weight and his food and alcohol consumption and relates the breath test to when the defendant was actually driving). Contrary to Appellant's assertion, the State is not required to present extrapolation evidence to obtain a conviction for the "per se" type of DWI offense. *See Forte v. State*, 707 S.W.2d 89, 95 (Tex.Cr.App.1986); *Owen v. State*, 905 S.W.2d 434, 438–39 (Tex.App.—Waco 1995, pet. ref'd); *Daricek*, 875 S.W.2d at 772–73.

Appellant cites *McCafferty v. State*, 748 S.W.2d 489 (Tex.App.—Houston [1st Dist.] 1988, no pet.) in support of his argument. The issue in *McCafferty* was "whether sufficient evidence supported the conviction and the court used the now-discarded "reasonable hypothesis" test in setting the conviction aside." *Owen*, 905 S.W.2d at 438. In *McCafferty*, the defendant was the driver of a vehicle that was in a single car accident around 2:30 a.m. The officer arrived at the scene at 3:50 a.m. and gave the defendant field sobriety tests which she failed. The defendant was taken to the police station and given a breath test at 4:45 a.m. that showed an alcohol concentration level of 0.18. *McCafferty*, 748 S.W.2d at 490. In holding the evidence insufficient to support the conviction, the *McCafferty* court found that the State did not exclude the hypothesis that the defendant had been drinking between the time she last drove the car at 2:30 a.m. and the arrival of the officer at 3:50 a.m. *Id.* at 491. The *McCafferty* court also noted that the State's expert witness did not explain absorption and metabolization rates of intoxi-

cation, or in any way connect the breath test results at 4:45 a.m. to the defendant's condition when driving. *Id.*

Here, no time elapsed between Appellant's operation of the vehicle and the officer's opportunity to observe his demeanor and administer field sobriety tests. Evidence that Appellant failed field sobriety tests immediately after driving his vehicle tends to make it more probable that the breath test taken approximately twenty minutes later accurately reflected his condition at the time of the offense. *See Daricek*, 875 S.W.2d at 773; Tex.R. Evid. 401. Appellant did not present any evidence that his alcohol concentration level increased between his arrest and the breath test. *See Forte*, 707 S.W.2d at 95. Indeed, as the State pointed out at trial, Weatherford testified that prior to the breath test, Appellant did not "place anything in his mouth that might have contained alcohol." Further, on appeal, Appellant does not challenge the validity of the test by attacking the reliability of the machine or the qualifications of the operator. *Id.* Moreover, unlike in *McCafferty*, the State was not required to exclude every other reasonable hypothesis except Appellant's guilt. For these reasons, we conclude that *McCafferty* does not control our disposition of this issue.

Based on the foregoing, we hold that the jury could have reasonably inferred from the evidence presented that Appellant had an alcohol concentration level of 0.10 or more at the time he was operating a motor vehicle in a public place. The question of the lag time between driving and the breath test is a matter to be weighed by the jury. *Id.* Accordingly, the trial court correctly included the "per se" definition of intoxication in the charge. *See Owen*, 905 S.W.2d at 439. Thus, we overrule issue two.

The judgment of the trial court is affirmed.