Affirmed and Opinion filed August 7, 2003









Affirmed and Opinion filed August 7, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00737-CR

____________

 

ALFREDO JARAMILLO GARCIA,
Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 



 

On
Appeal from the 174th District Court

Harris County, Texas

Trial
Court Cause No. 866,142

 



 

O
P I N I O N

After
a bench trial, appellant Alfredo Jaramillo Garcia was found guilty of
intoxication manslaughter.  Asserting
four points of error, he now seeks a reversal of his conviction and a judgment
of acquittal, or, in the alternative, a new trial.  We affirm.








FACTUAL
AND PROCEDURAL BACKGROUND

On
August 4, 2000, at approximately 8:30 p.m., Darius Johnson and complainant
Lydia Onezine walked from their apartment to a nearby convenience store to get
ice cream.  They left the store to return
home at approximately 9:30 p.m.  To
return to their apartment, they crossed Aldine Bender RoadCa
seven-lane highwayCin the middle of the block. 

According
to Johnson=s testimony at trial, complainant and Johnson crossed three
lanes of traffic without incident and were standing in the center left-turn
lane waiting for the remaining three lanes of traffic to clear, when Johnson
heard the sound of appellant=s truck approaching. Before Johnson could push complainant out
of the way, appellant=s vehicle Ca 31,460 lb. wrecker used to haul 18-wheelersCstruck
complainant, propelling her into the air. 
Landing 172 feet away in a lane of oncoming traffic, complainant was
subsequently run over by a Suburban.  She
died from blunt force trauma and multiple injuries.

Evidence
shows that after the accident, appellant stopped his truck in the lane
immediately adjacent to the highway=s left-turn lane and exited his vehicle.   According to Johnson, appellant emitted a
strong odor of alcohol, made a comment about messing up the front of his truck,
and Astaggered@
to the back of the wrecker.  Appellant
then walked towards the convenience store.

At
this point, according to Johnson, Johnson Abeat the hell out of@ appellant, hitting him in the face, chest, and neck.[1]   Johnson then returned to the scene of the
accident and, from a distance, kept an eye on appellant as appellant slowly
walked away from the scene.  When the
police arrived, appellant was apprehended several yards from the accident
site.  He was still within sight of
Johnson and others at the scene.








At
trial, several people testified that appellant exhibited signs of being under
the influence of alcohol.  Four witnesses
testified they detected a strong odor of alcohol coming from his person; three
testified he appeared disoriented and/or wandered away from the scene; two
testified he had blood-shot eyes; six testified he Astumbled@
or had trouble maneuvering; and three testified his speech was slurred.  There was also testimony appellant fell
asleep at the scene after being placed in an officer=s
patrol car.

Although
no testimony or evidence was proffered at trial to show appellant vomited at
the scene, appellant contends the strong odor of alcohol coming from his person
was due to his having vomited as a result of Johnson=s
beating.  Appellant also contends his
disorientation, red eyes, and slurred speech were the result of Johnson=s
beating as well. 

At
the scene of the accident, appellant refused to submit to a field sobriety
test.  He was transported to a Harris
County Jail facility where, approximately two hours after the accident, he
underwent an involuntary blood alcohol test administered pursuant to the Texas
Transportation Code.  See Tex. Transp. Code Ann. 724.012(b)
(Vernon 1999).  Appellant was also
interviewed by law enforcement personnel and the interview was recorded on a
video. This Aintox video@ was lost or destroyed by the district attorney=s
office prior to trial.

Appellant
was subsequently charged with intoxication manslaughter.  After a bench trial, he was found guilty and
punishment was assessed at seven years= confinement in the Texas Department of Criminal Justice,
Institutional Division.  Appellant=s
sentence was suspended and he was placed on community supervision.  

After
a motion for new trial that was overruled by operation of law, appellant gave
timely notice of appeal.

ISSUES
ON APPEAL

Asserting
four points of error, appellant contends (1) he was denied effective assistance
of counsel; (2) the trial court erred when it denied his motion to suppress the
State=s
evidence regarding his blood alcohol level; and (3) and (4), the evidence was
legally and factually insufficient to sustain a conviction for intoxication
manslaughter because it failed to establish that his intoxication caused
complainant=s death.  








INEFFECTIVE
ASSISTANCE OF COUNSEL

In
his first point of error, appellant asserts he was denied effective assistance
of counsel because his attorney failed to Arecognize that the State=s conduct on the night in question with regard to the forced
taking of [appellant=s] blood specimen was pursuant to a law which had been
repealed.@  

Because
the statutory authority cited by the State in ordering hospital officials to
draw appellant=s blood was repealed by the Texas legislature, appellant
argues, Aall
rights and authorities . . . afforded to [the ordering peace officer] . . .
were extinguished.@ Thus, the government=s actions were not authorized and trial counsel was ineffective
in failing to raise this issue before the trial court.  We disagree. 


1.       Standard of Review

When
an appellant asserts his trial counsel was ineffective, he must prove (1) his
trial counsel=s representation was deficient; and (2) his trial counsel=s
deficient performance was so serious that it prejudiced his defense.  Strickland v. Washington, 466 U.S.
668, 686, 104 S.Ct. 2052, 2064 (1984); Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002).  

Indeed,
appellant must prove by a preponderance of the evidence that counsel=s
representation fell below the objective standard of prevailing professional
norms, and there is a reasonable probability that, but for counsel=s
deficiency, the result of the proceeding would have been different.  Id.  
To accomplish this, appellant must identify the specific Aacts
or omissions of counsel that are alleged@ to constitute ineffective assistance and affirmatively prove
that they fell below the professional norm for reasonableness.  McFarland v. State, 928 S.W.2d 482,
500 (Tex. Crim. App. 1996) (citing Strickland, 466 U.S. at 690, 104 S.Ct. at
2065-66).








2.       Pertinent Facts

Following
appellant=s accident, appellant was taken to the Harris County Jail,
where, according to the police, he was arrested for operating a motor vehicle
while under the influence of an alcoholic beverage and for failure to stop and
render aid.  See Tex. Pen. Code Ann. ''
49.04(a) and 49.01(2) (Vernon 2003); Tex.
Transp. Code Ann. ' 550.023 (Vernon 1999). 
He was asked to provide a blood specimen and refused.  

As
a result of appellant=s refusal, officers presented a Aform TLE-51" to the medical staff of the jail.  Sections 2 and 3 of article 6701l-5,
V.T.C.S., are cited on form TLE-51 as legal authority for collecting
involuntary blood specimens.  Article
6701l-5 was revised and codified in Chapter 724 of the Texas
Transportation Code in 1995.  

Although
appellant objected to the involuntary taking of his blood, he did not
physically resist.  Prior to trial,
however, appellant=s trial counsel filed a motion to suppress the results of the
State=s
blood test.  In it, trial counsel argued
appellant=s blood specimen was taken as a result of an illegal search and
seizure because (1) appellant was not arrested for an offense under Chapter 49
of the Texas Penal Code, as required by the statute; (2) appellant=s
sample was not taken within a reasonable time period after the incident in
question; and (3) the person who withdrew appellant=s
blood was not a qualified technician and withdrew the sample in a place and
manner violative of the Texas Transportation Code.  Defense counsel did not argue the illegality
of the State=s actions based on the repeal of article 6701l-5. 

The
trial court denied the motion.

3.       Discussion








Appellant
contends the State lacked authority to draw appellant=s
blood because the Texas legislature Arepealed@ the statute cited by the State in its TLE-51 form.[2]  Appellant further argues that the blood taken
by the State was the result of an illegal search and seizure and should have
been suppressed. This failure to argue the repeal of article 6701l-5,
appellant asserts, constituted ineffective assistance of counsel.  We disagree.

First,
appellant points to no place in the record where he has demonstrated that
defense counsel=s performance was deficient. 
An assertion of ineffective counsel will be sustained only if the record
affirmatively supports such a claim.  See
Ex parte Ewing, 570 S.W.2d 941, 943 (Tex. Crim. App.
1978).  Without a record to explain trial
counsel=s
rationale, there is a Astrong presumption that counsel was competent.@  Perez v. State, 56 S.W.3d 727, 730-31 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d).; see also Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Indeed, to
defeat the presumption of reasonable professional assistance, A[a]ny
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  McFarland, 928 S.W.2d at 500.

Next,
there is nothing in the record to suggest the trial court would have granted
appellant=s motion to suppress even if trial counsel had asserted
appellant=s proffered argument. 
Without such evidence, appellant cannot prove the second prong of StricklandCnamely,
that Abut
for@
appellant=s counsel=s deficient performance a motion to suppress would have been
granted.  See Strickland, 466 U.S.
at 686, 104 S. Ct. at 2064; Bone, 77 S.W.3d at 833.








Appellant
cannot prove Strickland=s second prong because, even if trial counsel had asserted the
argument that the State lacked authority to draw appellant=s
blood on the basis of the recodified statute, we cannot say that denial of
appellant=s motion to suppress would have been improper.   First, the new act set forth in the Texas
Transportation Code is almost identical to the provisions of the former
statute.  Compare Tex. Transp. Code Ann. ''
724.013 and 724.012(b) (Vernon 1999) with Tex.
Rev. Civ. Stat. Ann. art. 6701l-5, '' 2(a) and 3(i).[3]  Second, the legislature presumably enacted
the change with complete knowledge of existing law.  Acker v. Texas Water Comm=n, 790 S.W.2d 299, 301 (Tex. 1990); see also Coastal Indus.
Water Auth. v. Trinity Portland Cement Div., 563 S.W.2d 916, 918 (Tex.
1978) (it is presumed the legislature knew and adopted interpretation placed on
original act and intended for new enactment to receive same construction).  

Finally,
unless expressly provided otherwise, a reference to any portion of a statute or
rule applies to all reenactments, revisions, or amendments of the statute or
rule. 
Tex. Gov=t Code Ann. ' 311.027 (Vernon 1998); In re. R.J.J. 959 S.W.2d 185, 186
(Tex. 1998).  Indeed, any reference to a
statute or part of a statute revised by the Texas Transportation Code is Aconsidered
to be a reference to the part of [the] code that revises that statute or part
of that statute.@  See Tex. Transp. Code Ann. '
1.003 (Vernon 1999).  Thus, the Arepeal@
of article 6701l-5 would not have been a viable basis for a motion to suppress
appellant=s blood specimen.  








Because
we find nothing in the record to suggest trial counsel was deficient when he
failed to argue the repeal of article 6701l-5,
and because such a challenge to the legal authority of the State to obtain a
blood specimen would have properly been denied by the trial court, appellant
has not met his burden to prove he received ineffective assistance of counsel.  

Indeed,
it would have been futile for appellant=s counsel to seek suppression of appellant=s
blood sample based on the repeal of article 6701l-5.  To provide effective assistance, counsel need
not engage in futile acts.  See Mooney
v. State, 817 S.W.2d 693, 698 (Tex. Crim. App.
1991) (holding where there is no basis for presenting a motion, counsel is not
ineffective for failing to do such because counsel is not required to engage in
the filing of futile motions). 
Accordingly, we overrule appellant=s first point of error.

MOTION
TO SUPPRESS

In
his second point of error, appellant asserts the trial court erred in denying
appellant=s motion to suppress the State=s blood sample because the results of appellant=s
blood test were unreliable.  We disagree.

1.       Standard of Review

We
review a trial court=s ruling on a motion to suppress under an abuse-of-discretion
standard of review.  Oles v. State,
993 S.W.2d 103, 106 (Tex.
Crim. App. 1999); Dang v. State,
99 S.W.3d 172, 179 (Tex.
App.CHouston [14th Dist.] 2002, no pet. h.). 
There is an abuse of discretion when the ruling is so clearly wrong as
to be outside that zone within which reasonable persons might disagree.  Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).

We
afford almost total deference to a trial court=s determination of the historical facts that the record
supports, especially when the trial court=s fact findings are based upon an evaluation of credibility and
demeanor.  State v. Ross, 32
S.W.3d 853, 856 (Tex.
Crim. App. 2000).  We afford the same amount of deference to the
trial court=s ruling on mixed questions of law and fact if the resolution
of those questions turns on an evaluation of credibility and demeanor.  Id. 









We
review de novo the trial court=s application of law to facts in search and seizure cases.  Id. 
The taking of a blood specimen is considered a search and seizure under
both the federal and Texas Constitutions. 
Schmerber v. California, 384 U.S. 757, 767-68, 86 S.Ct. 1826
(1966); Aliff v. State, 627 S.W.2d 166, 170 (Tex. Crim. App. 1982); Knisley v. State, 81 S.W.3d 478, 483 (Tex. App.CDallas
2002, pet. ref=d). 

In
determining whether the trial court=s ruling on a motion to suppress is supported by the record, we
generally consider only the evidence adduced at the hearing on the motion
unless the suppression issues have been consensually relitigated by the parties
during the trial on the merits.  Rachal
v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996); Dang, 99 S.W.3d at 179. 
Because the parties in this case did not consensually relitigate the
suppression issues at trial, we will examine only the evidence before the trial
court at the suppression hearing.

2.       Discussion

(a)
     Reliability:
Procedures

At
a criminal proceeding arising out of an offense under Chapter 49 of the Texas
Penal Code, evidence of a person=s alcohol concentration as shown by the analysis of a specimen
of the person=s blood taken at the request or order of a peace officer is
admissible.  Tex. Transp. Code Ann. '
724.064 (Vernon 1999); Mireles v. Texas Dep=t
of Public Safety, 9 S.W.3d 128,
130 (Tex. 1999).  To be admissible, the
blood specimen must be taken in a Asanitary place@ by a Aphysician, qualified technician, chemist, registered
professional nurse, or licensed vocational nurse.@ Tex. Transp. Code Ann.'
724.017(a) (Vernon 1999). 








Such
test results are admissible even without proof that the underlying scientific
theory is reliable.  Slagle v. State,
570 S.W.2d 916, 921 (Tex.
Crim. App. 1978) (finding the State
need not establish as part of its predicate that a Breathalyzer examination is
a scientifically reliable test); Scherl v. State, 7 S.W.3d 650, 652 (Tex. App.CTexarkana 1999, pet. ref=d)(noting the Texas legislature has determined that intoxilyzer
test results are admissible when performed in accordance with the statutory
guidelines mandated by the Texas Transportation Code and Texas Department of
Public Safety Regulations).  

Rather,
the necessary predicate that the State must prove for admission of such
evidence is the use of properly compounded chemicals; the existence of periodic
supervision over the machine used; operation by one who understands the
scientific theory of the machine; and proof of the result of the test by a
witness or witnesses qualified to translate and interpret such results so as to
eliminate hearsay.  Slagle, 570
S.W.2d at 918 n. 2 (citing Cody v. State, 548 S.W.2d 401, 404 (Tex. Crim. App. 1977)) (finding proper predicate for allowing breathalyzer
examination results where authorities operated test according to Texas
Department of Public Safety checklist).  See also Lopez v. State, 731 S.W.2d 682,
687 (Tex. App.CHouston [1st Dist.] 1987, pet. denied), rev=d
on other grounds, 779 S.W.2d
411 (Tex. Crim. App. 1989) (finding proper predicate for allowing blood test into
evidence in light of testimony of medical technologist who drew the blood and
conducted the test as to her experience, custody of the sample, and manner of
conducting test). 

Here,
the State presented results from two tests conducted on blood drawn from
appellant two hours after the accident. 
The tests indicated a blood alcohol concentration (BAC) of .109 and .110
respectively.  Additionally, the State
presented evidence that the person extracting appellant=s
blood was a licensed vocational nurse, that she drew the blood in the clinic of
the Harris County Jail, and followed proper protocol in extracting and storing
the blood.  








The
State also presented evidence to show (1) the toxicologist who performed the
blood tests on appellant=s blood held a degree from Texas A&M University, was
certified as a toxicological chemist by the National Registry and the Texas
Registry, and performed an average of 150 blood tests per year; (2) the
laboratory in which appellant=s blood tests were performed was a sterile environment; (3) the
toxicologist who performed appellant=s blood tests followed proper laboratory procedures the day in
question; (4) the gas chromatograph used to analyze appellant=s
blood alcohol concentration performed properly and was checked regularly, thus
ensuring accurate calibration; and (5) the results gleaned from appellant=s
two tests were within acceptable variances of each other.   

Because
the State presented evidence that showed appellant=s
blood specimen was taken in a sanitary place by a licensed vocational nurse,
and because evidence was proffered showing use of properly-compounded
chemicals, periodic supervision, proper operation of the State=s
gas chromatograph by one who understands its scientific theory, and proof of
the test results by one who is qualified to translate and interpret such
results, we conclude the State=s evidence was reliable. 
See  Slagle, 570 S.W.2d at
918; Cody, 548 S.W.2d at 404.  See also Lopez, 731 S.W.2d at 687.  As such, we conclude admission of this
evidence was proper and refusal to suppress the evidence was not an abuse of
discretion.

(b)     Reliability: Retrograde Extrapolation

Citing
Mata v. State, however, appellant contends that the results of the blood
tests were not admissible because they failed to take into account the
scientific theory of Aretrograde extrapolation.@ 46
S.W.3d 902, 908-09 (Tex. Crim. App. 2001). Retrograde extrapolation is the Acomputation back in time of the
blood-alcohol levelCthat is, the estimation of the level [of blood alcohol
concentration] at the time of driving based on a test result from some later
time.@[4]  Id.








Because
the State failed to extrapolate appellant=s BAC at the time of appellant=s
accident by taking into account
what appellant ate and drank prior to driving, appellant contends, the State=s
test results were unreliable and should not have been admitted.  We disagree.

First,
nothing in Texas= statutory framework specifically mandates extrapolation
evidence.  Mireles, 9 S.W.3d at
130.  Rather, the Texas Legislature has
expressly made admissible evidence of alcohol concentration in any trial in
which driving while intoxicated is an issue, if the analysis is performed in
accordance with regulations of the Department of Public Safety.  Id. (holding test results admissible
without retrograde extrapolation) 








Next,
the necessity of retrograde extrapolation testimony has been rejected by the
preponderance of courts in this state, including this court.[5]  See e.g. Forte v. State, 707 S.W.2d
89, 96 (Tex. Crim. App. 1986); Annis v. State, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979); Verbois v. State, 909 S.W.2d 140, 142 (Tex. App.CHouston [14th Dist.] 1995, no pet.); Price v. State, 59 S.W.3d 297, 300 (Tex. App.CFort Worth 2001, pet. ref=d); O=Neal v. State,
999 S.W.2d 826, 832 (Tex.
App.CTyler
1999, no pet.).  See also Carrillo v. State, No. 08-01-00471-CR, 2003 WL
1889943, *7 (Tex. App.CEl Paso April 17, 2003, no pet. h.)(not designated for
publication); Ball v. State, No. 03-02-00037-CR, 2002 WL 1988250, at *3
(Tex. App.CAustin Aug. 30, 2002, pet. ref=d)(not designated for publication).[6]  Indeed, many Texas courts have sustained
convictions for driving while intoxicated based, in part, on after-the-fact
test results without expert extrapolation evidence.  Gowans v. State, 995 S.W.2d 787, 790 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d) (compiling cases).[7]

Third,
appellant=s reliance on Mata is misplaced.  See Mata, 46 S.W.3d at 909-10.  In Mata, the issue was not whether
retrograde extrapolation is necessary in order for the State to prove guilt in
a DWI case, or whether BAC test results showing a defendant=s
BAC at some time after the alleged offense are admissible at trial without
retrograde extrapolation.  Instead, the
issue was whether the science of retrograde extrapolation was reliably applied
in Mata=s
trial.  In that case, the Court of
Criminal Appeals concluded the trial court abused its discretion by admitting
testimony extrapolating a defendant=s breath test results back to the time he was driving because
the retrograde extrapolation testimony was unreliable.  Id. at 917. 








Finally,
unextrapolated test results are probative evidence for the jury to consider in
determining intoxication.  Verbois,
909 S.W.2d at 142 (finding unextrapolated breath test results taken two and
one-half hours after accident to be relevant as to whether appellant consumed
alcohol prior to accident, not unduly prejudicial, and admissible).  See also McCay v. State, 235 S.W.2d
173, 174 (Tex. Crim.
App. 1950) (evidence of a chemical analysis of
an alcohol breath test can be used to Asupplement . . . evidence obtained from observation of the
accused@
when there is proof of its accuracy, even though there may be evidence
disagreeing with its accuracy; such disagreement goes to the Aweight@
and not the Aadmissibility@ of the evidence);  Mireles,
9 S.W.3d at 130 (citing Forte, 707 S.W.2d at 95); Owen v. State,
905 S.W.2d 434, 438-39 (Tex.
App.CWaco
1995, pet. ref=d)(unextrapolated evidence is Aprobative@ evidence for trier of fact to consider and weigh).  But compare Stewart v. State, 103 S.W.3d 483 (Tex. App.CSan Antonio 2003, pet. filed)
(finding breath test results without extrapolation to be irrelevant and Ano evidence@). 

If,
as here, a defendant rebuts that evidence with evidence of his own that his
alcohol concentration level actually increased between the time of
arrest and administration of the test, the question of lagtime between driving
and the test becomes a matter to be weighed by the jury.  Owen, 905 S.W.2d at 439; see also O=Neal, 999 S.W.2d. at 832.

Because
the State was not required to provide retrograde extrapolation evidence in
order to establish its tests were reliable, and because the State met its
burden of showing use of properly-compounded chemicals, periodic supervision,
proper operation of machinery, and proof of the State=s
test results, we conclude admission of appellant=s blood tests was proper and that the trial court did not abuse
its discretion by refusing to suppress the BAC tests.

Accordingly,
we overrule appellant=s second point of error.

SUFFICIENCY
OF THE EVIDENCE

In
his third and fourth points of error, appellant argues the evidence was legally
and factually insufficient to sustain his conviction for intoxication
manslaughter.  Because the State failed
to show appellant=s intoxication caused complainant=s
death, he claims, the State failed to prove an element of his alleged offense
beyond a reasonable doubt.  See Tex. Pen. Code Ann. '
49.08 (Vernon Supp. 2003).  We disagree.

 1.      Standards
of Review

To
determine legal sufficiency, we view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S. Ct. 2781, 2788-89 (1979); Garrett v. State, 851 S.W.2d
853, 857 (Tex. Crim.
App. 1993). 
This standard of review applies to cases involving both direct and
circumstantial 








evidence.  King v. State, 895 S.W. 2d 701, 703 (Tex. Crim. App. 1993).  On appeal, this
court is not to reevaluate the weight and credibility of the evidence; rather,
we consider only whether the jury reached a rational decision.  See Muniz v. State, 851 S.W.2d 238,
246 (Tex. Crim. App. 1993).  The jury, as the
trier of fact, is the sole judge of the credibility of the witnesses.  See Soto v. State, 864 S.W.2d 687, 691
(Tex. App.CHouston [14th Dist.] 1993, pet. ref=d).  

To
determine factual sufficiency, we view the evidence in a neutral light and set
aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000).  Because appellant presented
exculpatory evidence, he contends the evidence greatly outweighed the State=s
evidence to the extent that the contrary finding is clearly wrong and
manifestly unjust.  Id. at
11.  The proper factual sufficiency
standard of review for the latter argument is whether the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  Id.

We
must review the evidence weighed by the jury tending to prove the existence of
the elemental fact in dispute, and compare it to the evidence tending to
disprove the fact.  Id. at 7.  The appellate court may find either that the
State=s
proof of guilt was so obviously weak as to undermine confidence in the jury=s
determination, or, where contrary evidence is presented, that the finding of
guilt was against the great weight and preponderance of the evidence.  Id. at 11.  However, a factual sufficiency review must be
appropriately deferential to avoid substituting our judgment for the fact
finder=s.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).  We are not free
to reweigh the evidence, but must exercise our jurisdiction only to prevent a
manifestly unjust result.  Id. 








2.       Discussion

A
person commits the offense of intoxication manslaughter if the person (1)
operates a motor vehicle in a public place; (2) is intoxicated,[8]
and, (3) by reason of that intoxication, (4) causes the death of another by
accident or mistake.  Tex. Pen. Code Ann. '
49.08 (Vernon Supp. 2003).  It is not
enough that operation of a vehicle, even by an intoxicated person, causes the
death; rather, the Adeath must be the result of the intoxication and proof must be
made . . . of that thing which worked a causal connection between the
intoxication and the death.@ Daniel v. State, 577 S.W.2d 231, 233 (Tex. Crim. App. 1979) (citing Long v. State, 214 S.W.2d 303, 304
(1948)).  See also Glauser v. State,
66 S.W.3d 307, 313 (Tex.
App.CHouston [1st Dist.] 2000, pet. ref=d).        

Here, appellant
asserts there is legally and factually insufficient evidence to prove his
intoxicationCif indeed he was intoxicatedCcaused the accident.  
The State=s proof, he claims, suggests only that he was intoxicated and
that he drove in excess of the posted speed; it does not prove he drove too
fast because he was intoxicated. 
We reject this argument.       Under
Texas law, a person Ais criminally responsible for his conduct if the result would
not have occurred but for his conduct.@  Tex. Pen. Code Ann. ' 6.04(a) (Vernon 1994); Barcenes v. State, 940 S.W. 2d
739, 745 (Tex. App.CSan Antonio 1997, pet. ref=d); Lowe v. State, 676 S.W.2d 658, 661 (Tex. App.CHouston [1st Dist.] 1984, pet. ref=d).

A criminal jury
can draw reasonable inferences regarding ultimate facts from basic facts. Lacour
v. State, 8 S.W.3d 670, 671 (Tex. Crim. App.
2000).  Circumstantial evidence may be
used to establish this causal connection. 
Barcenes, 940 S.W.2d at 745. 
See also 

 








Hines v. State, 515 S.W.2d 670, 673 (Tex. Crim. App.
1974); Martinez v. State, 980 S.W.2d 662, 667 (Tex. App.CSan Antonio 1998, pet. ref=d).[9]

At trial,
appellant produced the following evidence to suggest his alcohol consumption
did not contribute to his behavior the night of the accident: 

!         an accident reconstructionist testified
appellant=s speed was
only 40B50 mph at the
time of impact; 

 

!         a defense expert testified complainant
ingested marijuana immediately prior to the accident;

 

!         appellant=s
mother testified she saw appellant ingest only two beers that night;

 

!         a defense witness testified appellant
was diabetic and another testified he was bleeding at the time his blood
specimen was drawn;

 

!         a retrograde extrapolation expert
testified that diabetes and bleeding can impact the Aburn-off@
of alcohol in a person=s blood system
and so affect the point at which a person=s
BAC Apeaks@
following ingestion of alcohol; and

 

!         the same retrograde extrapolation
expert testified that appellant=s
BAC readings were in fact between .08 and .084 and so, based on what appellant
said he ate and drank that night, could only have been .05 at the time of the
accident.

 

The State, on
the other hand, proffered the following evidence to suggest appellant=s
behavior was linked to intoxication: 

!         an accident reconstructionist testified
it was consistent for intoxicated drivers to (1) drive Aby
braille@ by hitting the
reflectors in a road; (2) drive either very slowly or very fast; (3) refuse to
take sobriety tests; (4) have difficulty staying awake; (5) have Atunnel
vision@; (6) have
slower-than-normal reaction times; and (7) leave the scene of an accident; 

 

 








!         several eyewitnesses testified that
appellant (1) hit the reflectors in the road as he approached complainant; (2)
drove in excess of the posted speed; (3) refused to take a field sobriety test;
(4) fell asleep at the scene while waiting in a police officer=s
car; (5) had red, blood-shot eyes; (6) had a slower-than-normal reaction time,
as evidenced by the length of appellant=s
skid marks; and (7) wandered off at the scene; 

 

!         a toxicologist testified that appellant=s
BAC was between .109 and .110 at the time appellant=s
blood was drawn two hours after the accident; 

 

!         appellant=s
retrograde extrapolation expert testified (1) that he did not follow the
formula established by the National Highway Traffic and Safety Administration
for determining blood alcohol concentration, and (2) he relied on information
given by appellant to extrapolate appellant=s
BAC at the time of the accident;

 

!         a State retrograde extrapolation expert
testified that (1) appellant=s
diabetes and bleeding did not substantially influence the Aburn-off@
of alcohol in appellant=s blood, and
(2) appellant=s ingestion of
only two beers the night of the accident would, if true, have produced a BAC of
between .03 and .05 instead of the value obtained; and  

 

!         an accident reconstructionist testified
that Abut for the
defendant being intoxicated,@
complainant would not have been hit, because all appellant Ahad
to do was move over eight inches to the right.@

 

Based on the
evidence proffered by the State, we are persuaded that a factfinder could
reasonably have found complainant operated his motor vehicle at a time when he
did not have the Anormal use@ of his mental or physical faculties or when he had an alcohol
concentration of 0.08 or more.  See
Tex. Pen. Code Ann. ''
49.01(2), 49.04(a) (Vernon 2003).  See
also Tex. Pen. Code Ann. '
49.08 (Vernon 2003).  Additionally, we
are persuaded a factfinder could reasonably have found that, Abut
for@
appellant=s intoxication, complainant=s death would not have occurred.  

We therefore
conclude the evidence was legally sufficient to support a finding of
causation.  See Lowe, 676 S.W.2d
at 661 (finding sufficient evidence defendant Acaused@ victim=s death where victim died of pneumonia, the pneumonia was a
result of stab wound 








complications, and defendant inflicted the
stab woundsCdespite evidence suggesting such wounds are Anot
normally fatal@); Barcenes, 940 S.W.2d at 745 (finding sufficient
evidence defendant Acaused@ infant=s death where (1) infant died from Amassive
blunt trauma to the head,@ (2) defendant had sole custody and care of the infant at the
time of injury, (3) defendant=s version of events was medically discredited, and (4)
defendant attempted to cover up his guilt by getting someone to lie for him). 

Moreover, the
evidence was factually sufficient because the verdict was not so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust.  See Johnson, 23 S.W.3d at 7.  

Because the
evidence was both legally and factually sufficient to support a finding that
appellant=s intoxication caused complainant=s
deathCand
to permit a rational jury to find all the essential elements of intoxication
manslaughterCwe overrule appellant=s third and fourth points of error.

*   *  
*   *

Having
overruled all of appellant=s points of error, we affirm the judgment of the trial court. 

 

 

 

/s/        John
S. Anderson

Justice

 

 

Judgment rendered and Opinion filed August
7, 2003.

Panel consists of Justices Anderson,
Seymore, and Guzman.

PublishCTex. R. App. P. 47.2(b).











[1]  Although
Johnson told police at the scene that appellant was beaten up by six or seven
other people and that he personally did not assault appellant, Johnson
subsequently recanted this story.  





[2]  Although
appellant asserts article 6701l-5 was Arepealed,@ the statute was in fact revised and codified in
Chapter 724 of the Texas Transportation Code. 
See Tex. Transp. Code
Ann. '' 724.012B724.064
(Vernon 1999).





[3]  Section
724.013 of the Texas Transportation Code provides that A[e]xcept as provided by Section 724.012(b), a specimen
may not be taken if a person refuses to submit to the taking of a specimen
designated by a peace officer,@ while section 2(a) of article 6701l-5 provided
that A[e]xcept as provided by Subsection (i) of Section 3 of
this Act, if a person under arrest refuses, upon the request of a peace
officer, to give a specimen designated by the peace officer as provided in
Section 1, none shall be taken.@ See Tex.
Transp. Code Ann. ' 724.013 (Vernon 1999); Tex. Rev. Civ. Stat. Ann. art. 6701l-5, ' 2(a) (Vernon Supp. 1992). 

Subsection 724.012(b) of the Texas
Transportation Code provides that A[a]
peace officer shall require the taking of a specimen of the person=s breath or blood if: (1) the officer arrests the
person for an offense under Chapter 49, Penal Code, involving the operation of
a motor vehicle . . .; (2) the person was the operator of a motor vehicle . . .
involved in an accident that the officer reasonably believes occurred as a
result of the offense; (3) at the time of the arrest the officer reasonably
believes that a person has died or will die as a direct result of the accident;
and (4) the person refuses the officer=s
request to submit to the taking of a specimen voluntarily,@ while section 3(i) of article 6701l-5 provided
that A[a] peace officer shall require a person to give a
specimen under Section 2 of this Act if: (1) the officer arrests the person for
an offense under Subdivision (2), Subsection (a), Section 19.05, Penal Code, or
an offense under Article 6701l-1, revised Statutes, as amended; (2) the
person was the operator of a motor vehicle involved in an accident that the
officer reasonably believes occurred as a result of the offense; (3) at the
time of the arrest the officer reasonably believes that a person has died or
will die as a direct result of the accident; and (4) the person refuses the
officer=s request to voluntarily give a specimen.@  See Tex. Transp. Code Ann. ' 724.012(b) (Vernon 1999); Tex. Rev. Civ. Stat. Ann. art. 6701l-5, ' 3(i) (Vernon Supp. 1992).





[4]  Retrograde
extrapolation is based on the theory that, as alcohol is consumed, it  is passed from a person=s stomach and intestines into his blood.  Mata v. State, 46 S.W.3d 902, 909
(Tex. Crim. App. 2001).
 When the alcohol reaches the brain and nervous
system, the characteristic signs of intoxication begin to appear.  Id. The length of time necessary for
alcohol to be absorbed into a person=s blood
stream depends on a variety of factors, including (1) the presence and type of
food in the stomach; (2) the person=s
gender, weight, age, mental state, and drinking pattern; (3) the amount and type
of beverage consumed; and (4) the time period of alcohol consumption.  Id. 
At some point after drinking has ceased, the person=s blood alcohol concentration will reach a peak; after
the peak, the concentration will begin to fall as alcohol is eliminated from
the person=s body.  Id. 

Under the theory of retrograde extrapolation, a single
reading of a person=s blood alcohol level after an automobile accident
does not reflect where in the absorption process a person is at the time of the
test.  Id.  If the person is tested while in the
absorption phase, his blood alcohol concentration at the time of the test will
be higher than when driving.  Id.  If tested while in the elimination phase, the
person=s blood alcohol concentration at the time of the test
could be lower than while driving, depending on whether the person had reached
his peak before or after the accident.  Id. 

The greater the length of time between
driving and the test, therefore, the greater the potential variation between
the person=s blood alcohol concentration at the time of an
accident and at the time of a test.  Id. at 909-910. 





[5]  The Texas
Court of Criminal Appeals has not determined whether retrograde extrapolation
is necessary for admission of breath or blood tests in a DWI case.  In Mata, the Court expressly refrained
from addressing the issue.  Mata, 46
S.W.3d at 910.  In Beard v. State,
an opinion withdrawn on rehearing after appellant=s death,
the Court stated it Ahas never accepted@ the
argument that tests showing a subject=s blood
alcohol concentration are irrelevant in the absence of retrograde extrapolation
testimony.  Beard v. State, 2002
WL 31116936, at *4 (Tex. Crim. App. Sept. 25, 2002), opin. withdrawn on reh=g, 2003 WL
21350757 (Tex. Crim. App. June 11, 2003).





[6]  Courts in
other jurisdictions have reached the same conclusion.  See e.g. State v. Barber, 681 A. 2d
348 (Conn. 1996); Com. v. Wirth, 936 S.W.2d 78 (Ky. 1996); Haas v.
State, 597 So. 2d 770 (Fla. 1992) (compiling cases); State v. Kubik,
456 N.W.2d 487 (Neb. 1990); Desmond v. Superior Court, 779 P. 2d 1261
(Ariz. 1989); Sullivan v. State, 517 N.E.2d 1251 (Ind. Ct. App. 1988); People
v. Mertz, 497 N.E.2d 657 (N.Y. 1986). 
But compare Com. v. Jarman, 601 A.2d 1229 (Pa. 1992); State v.
Ladwig, 434 N.W.2d 594 (S.D. 1989); State v. Rollins, 444 A.2d 884 (
Vt. 1982).





[7]  See also
Martin v. Texas Dep=t of Public Safety, 964 S.W.2d 772, 776 (Tex. App.CAustin
1998, no pet.); Daricek v. State, 875 S.W.2d 770, 773 (Tex. App.CAustin 1994, pet. ref=d); Owen v. State, 905 S.W.2d 434, 438-39 (Tex.
App.CWaco 1995, pet. ref=d); Wagner
v. State, 720 S.W.2d 827, 830 (Tex. App.CTexarkana
1986, pet. ref=d).





[8]  A
person is considered Aintoxicated@
if he (1) does not have the normal use of mental or physical faculties by
reason of the introduction of alcohol, a controlled substance, a drug, a
dangerous drug, a combination of those substances, or any other substance into
the body; or (2) has an alcohol concentration in his breath, blood or urine of
0.08 or more.  Tex. Pen. Code Ann. ''
49.01(2)(A) and (B) (Vernon 2003).





[9]  The Texas
Supreme Court has also addressed this issue, holding a plaintiff may establish
a causal connection through circumstantial evidence and reasonable inferences
drawn from such evidence.  Continental
Coffee Products Co. v. Cazarez, 937 S.W.2d 444, 450-51 (Tex. 1996); Davis
v. Anderson, 501 S.W.2d 459, 463 (Tex. App.CTexarkana
1973, no pet.).