IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0225-11






CECIL EDWARD ALFORD, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY





 Alcala, J., delivered the opinion of a unanimous Court.


O P I N I O N



Appellant, Cecil Edward Alford, challenges the court of appeals's holding that the
trial court properly admitted appellant's un-Mirandized (1) custodial statements made in
response to "questioning attendant to an administrative 'booking' procedure." Alford v. State,
333 S.W.3d 358, 361 (Tex. App.--Fort Worth, 2010) (mem. op.). We granted appellant's
petition for discretionary review to address his contentions that the court of appeals erred (1)
by applying an abuse-of-discretion standard in reviewing the trial court's ruling that the
questioning did not offend Texas Code of Criminal Procedure arts. 38.22, § 3(a)(2) (2) and
38.23(a); (3) and (2) by affirming the trial court's admission of the statements under the
"booking question exception" to Miranda because "the officer's questions--unlike routine
booking questions--were reasonably likely to elicit incriminating responses." We conclude
that an appellate court must generally review de novo whether a question comes within the
booking-question exception to Miranda, and that the court of appeals did not err by affirming
the trial court's admission of appellant's statements under that exception. We affirm.

I. Background

A. Facts

At the beginning of his shift on January 29, 2009, Officer Ramirez of the Fort Worth
Police Department inspected his patrol car and found no contraband in it. That evening, he
was dispatched to investigate a report of a person with a weapon. (4) When he arrived at the
location, he observed appellant getting out of a car with an open beer in his hand. He
approached appellant and advised him that it was illegal to have an open container in public
near a school. He asked appellant "some basic questions," including whether "he had any
narcotics or anything on him," which appellant denied. When he asked appellant specifically
about drugs and weapons, appellant became nervous and "started backing up a little bit." He
advised appellant that he was being detained and was not free to leave, but appellant "took
a couple of steps back" and then began running. A chase ensued. With the assistance of his
partner, Officer Caffey, Officer Ramirez was able to detain appellant. He arrested appellant
for evading arrest or detention. See Tex. Pen. Code § 38.04. 

While transporting appellant to jail, Officer Caffey noticed that appellant "was laying
over on the seat kind of squirming around." When he asked appellant what he was doing,
appellant responded that "his side was hurting," but he refused medical attention. Upon
arrival, the officers escorted appellant out of the back seat and then, pursuant to department
procedure, searched the back seat. From underneath the back seat, they recovered a clear
plastic bag with pills inside and, directly under the bag, a computer flash drive, which is also
referred to as a "thumb" drive. Once they had collected those items, the officers escorted
appellant to the booking area where arresting officers routinely complete required paperwork
and facility personnel conduct a pre-incarceration search. 

According to Officer Ramirez, as facility personnel searched appellant during the
booking process, "I took the thumb drive that was located in the back seat and held it up and
I asked him what it was." Appellant responded, "It's a memory drive," and Officer Ramirez
followed up with, 'Is it yours?'" Appellant confirmed that it belonged to him, and Officer
Ramirez placed it with appellant's other personal property. (5) Appellant had not yet been
advised of his rights under Miranda or Texas Code of Criminal Procedure article 38.22 §
2(a). See Tex. Code Crim. Proc. art. 38.22. 

Officer Ramirez requested "criminal analysis" of the unknown substance found in the
patrol car. Testing revealed that the substance was over four grams of
methylenedioxymethamphetamine, commonly known as "MDMA" or "ecstasy." Appellant
was charged by indictment of possession of a controlled substance of four grams but less than
400 grams. See Tex. Health & Safety Code § 481.116(d).

B. Pretrial Motion to Suppress Evidence

Appellant filed a pretrial motion to suppress his responses to Officer Ramirez's
questions regarding the flash drive. At the pretrial hearing on the motion, he argued that
Officer Ramirez's questioning constituted custodial interrogation and that, because no
warnings had been issued, appellant's responses were inadmissible under Texas Code of
Criminal Procedure articles 38.22 and 38.23. See Tex. Code Crim. Proc. arts. 38.22 &
38.23. The State responded that the questioning comprised only "questions that are generally
asked at book-in" in order to properly manage personal property and were not interrogation.
Officer Ramirez testified that his department has a "standard procedure" in handling
individuals' personal property and that department members must "follow procedures as far
as finding out what property belongs to the individual so it can be tied with their personal
property." He explained that with "[w]allets, watches, any type of personal property," they
must confirm that it belongs to a suspect by asking, "'Is this your property?' That way we
can put that into their personal property. We don't want to put something that's not theirs into
property." If it does belong to a suspect, "then it goes into the personal property to the
Mansfield [facility] law enforcement personnel," who are contracted by the Fort Worth
Police Department to handle "book-in, handling, and holding" of inmates. 

Officer Ramirez testified that, upon arriving at the jail, he asked appellant "questions
in reference to the thumb drive" in order "to establish if it was his property." After
confirming that the item did belong to appellant, he gave it to facility personnel, who then
"placed it in [appellant's] personal property." He confirmed that the thumb drive was not
collected as evidence and that he never saw it again. 

The trial court denied the motion and admitted appellant's statements. Although the
trial judge did not enter written findings of fact and conclusions of law, he did make oral
findings and conclusions on the record. (6) In rendering his ruling, he observed that certain
law-enforcement procedures serve "a housekeeping function in which questions and answers
are necessary in order to routinely process the prisoner." He determined that Officer
Ramirez's subjective intent in asking the questions was the "best evidence" of whether the
questioning constituted interrogation, noting that "when [appellant said], 'It's mine,' [Officer
Ramirez] didn't say, 'Oh, well, never mind,' this is no longer personal property. This is
going to the crime lab for fingerprints. . . . This is going to the computer lab to be analyzed."
He emphasized that the drive was placed in appellant's property "never to be seen again." 
He concluded, 

For purposes of 38.22 I find as a matter of fact and law, he was in custody. 
I'm simply finding it was [sic] (7) a custodial interrogation. It was normal
processing. Based on the totality of the book-in, I find it's not normal
interrogation. . . . it was two quick questions that resulted in someone's
personal property being placed in the personal property bag. And, therefore,
those two statements, within a very narrow context, are admissible and do not
violate 38.22. If they don't violate 38.22, then as a matter of law, they can't
violate 38.23. 


At trial, the State introduced the statements to help establish appellant's knowledge and
possession of the controlled substance. The jury ultimately convicted appellant, and he was
sentenced to five years' confinement. 

 On direct appeal, appellant contended, in a single issue, that the trial court erred in
admitting his oral statement "which was not preceded by any rights advisements or a waiver
of rights." Alford, 333 S.W.3d at 360. He argued that "Officer Ramirez's questions were
designed to elicit incriminating information" and that they "constituted custodial
interrogation." Id. at 360-61. The court of appeals noted that "questioning attendant to an
administrative 'booking' procedure does not generally require Miranda warnings." Id. at 361. 
It concluded that, given the facts of the case, "the information adduced by Officer Ramirez
was produced from administrative questioning" and held that "the trial court did not abuse
its discretion by concluding that Alford's statements were made during normal processing."
Id. We granted review to determine whether the trial court erred in admitting the statements
under the booking-question exception to Miranda.

II. Applicable Law

A. General Standard of Review

In reviewing a trial court's ruling on a Miranda-violation claim, an appellate court
conducts a bifurcated review: it affords almost total deference the trial judge's rulings on
questions of historical fact and on application of law to fact questions that turn upon
credibility and demeanor, and it reviews de novo the trial court's rulings on application of
law to fact questions that do not turn upon credibility and demeanor. Ripkowski v. State, 61
S.W.3d 378, 381-82 (Tex. Crim. App. 2001) (citing Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997)). The decision as to whether custodial questioning constitutes
"interrogation" under Miranda is a mixed question of law and fact, and we defer to the trial
court's fact findings that turn on an evaluation of credibility and demeanor. See id. If
credibility and demeanor are not necessary to the resolution of an issue, whether a set of
historical facts constitutes custodial interrogation under the Fifth Amendment is subject to
de novo review because that is an issue of law: it requires application of legal principles to
a specific set of facts. See id.; see also Riley v. United States, 923 A.2d 868, 883-84 (D.C.
Cir. 2007), cert. denied, 555 U.S. 830 (2008) ("[W]e review de novo whether the defendant's
rights were 'scrupulously honored' and whether the police conduct constituted 'interrogation'
because these are questions of law."). The parties dispute what standard of review applies
to the appellate review of the booking-question exception to Miranda, and we decide that
matter later in this opinion. 

 B. Custodial Interrogation and the Booking-Question Exception to MirandaIn Miranda v. Arizona, the Supreme Court held that "the prosecution may not use
statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the
defendant unless it demonstrates the use of procedural safeguards effective to secure the
privilege against self-incrimination." 384 U.S. 436, 444 (1966). (8) This is because "the
coercion inherent in custodial interrogation blurs the line between voluntary and involuntary
statements, and thus heightens the risk that an individual will not be accorded his privilege
under the Fifth Amendment not to be compelled to incriminate himself." Id. at 439. 

The Court later elaborated upon the meaning of "interrogation" under Miranda in
Rhode Island v. Innis, explaining that the term refers to (1) express questioning and (2) "any
words or actions on the part of the police (other than those normally attendant to arrest and
custody) that the police should know are reasonably likely to elicit an incriminating response
from the suspect." 446 U.S. 291, 301 (1980). The Innis test "focuses primarily upon the
perceptions of the suspect, rather than the intent of the police" in determining whether the
suspect was coerced to provide incriminating information while in custody. Id.; Illinois v.
Perkins, 496 U.S. 292, 296 (1990). But "any knowledge the police may have had concerning
the unusual susceptibility of a defendant to a particular form of persuasion" may be relevant
in determining what the police knew or should have known in asking a question. Innis, 446
U.S. at 302 n.8. (9) 

The Court has since identified certain types of questions that are "normally attendant
to arrest and custody" that are not, therefore, subject to the should-have-known test. See, e.g.,
South Dakota v. Neville, 459 U.S. 553, 564 n.15 (1983). It has held, for example, that in the
context of a DWI arrest, "a police inquiry of whether the suspect will take a blood-alcohol
test is not an interrogation within the meaning of Miranda" because such a question, the
Court concluded, is "normally attendant to arrest and custody." Id. (10) 

A four-justice plurality has also explicitly recognized, as a type of question "normally
attendant to arrest and custody," a "routine booking question exception" to Miranda that
"exempts from [Miranda]'s coverage questions to secure the biographical data necessary to
complete booking or pretrial services." (11) Pennsylvania v. Muniz, 496 U.S. 582, 600-02
(1990) (Brennan, J., plurality op.) (internal quotation marks omitted). It explained that
questions that are asked "for record-keeping purposes only" and are "reasonably related to
the police's administrative concerns . . . fall outside the protections" of Miranda. Id. at 601-02. Routine booking questions are, by definition, questions normally attendant to arrest and
custody and "do not, by their very nature, involve the psychological intimidation that
Miranda is designed to prevent. At the same time, they serve a legitimate administrative
need." United States v. Doe, 878 F.2d 1546, 1551 (1st Cir. 1989) (internal citations omitted). 
State and federal courts have uniformly recognized the Muniz plurality opinion as
establishing such an exception, including this Court. See Cross v. State, 144 S.W.3d 521, 525
n.5 (Tex. Crim. App. 2004). (12) 

1. Questions reasonably related to administrative concerns

The Muniz plurality held that questioning Muniz about his "name, address, height,
weight, eye color, date of birth, and current age" was Miranda exempt because these
questions were "reasonably related to the police's administrative concerns." Muniz, 496 U.S.
at 601-02. However, the Court has provided no definitive guidance on the scope of the
exception. State and federal courts, including Texas's intermediate courts, have since
undertaken to identify what routine custodial questions are reasonably related to a legitimate
administrative concern so to potentially fall within the exception's parameters. See Townsend
v. State, 813 S.W.2d 181, 186 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd) (holding
that questions regarding suspect's name, address, weight, height, place of employment, or
physical disabilities "normally attendant to arrest and custody"). (13) Conversely, courts have
held that questions that do not reasonably relate to a legitimate administrative concern are
not "booking questions" within the exception. See Branch v. State, 932 S.W.2d 577, 581
(Tex. App.--Tyler 1995, no pet.) (asking defendant "where he had been going at the time he
was pulled over, when and what he had last eaten, and whether he had drunk an alcoholic
beverage . . . went beyond the scope of that normally attending arrest and custody and
amounted to custodial interrogation"). (14) 2. Booking questions "designed to elicit incriminatory admissions"
not Miranda-exempt


A primary dispute between the parties concerns a footnote at the end of the plurality
opinion in Muniz, in which Justice Brennan stated that

recognizing a "booking exception" to [Miranda] does not mean, of course, that
any question asked during the booking process falls within that exception. 
Without obtaining a waiver of the suspect's [Miranda] rights, the police may
not ask questions, even during booking, that are designed to elicit
incriminatory admissions.


Muniz, 496 U.S. at 602, n.14 (Brennan, J., plurality op.) (internal quotations and citations
omitted). The meaning of this footnote and how courts are to apply it has been the subject
of debate among courts throughout the country. See Meghan S. Skelton & James G. Connell,
III, The Routine Booking Question Exception to Miranda, 34 U. Balt. L. Rev. 55, 78-94
(2004) (examining varying judicial interpretation of booking-question exception post-Muniz). 

Appellant proposes that we apply the should-have-known test in deciding the
admissibility of booking questions. He contends that the footnote implies that, even though
a question may reasonably relate to an administrative concern and is, therefore, technically
a "booking question," the evidence is inadmissible "when an officer should know that his
question is reasonably likely to elicit an incriminating response from the suspect." He argues
that a booking-question exception that is unlimited by an objective should-have-known
standard is inconsistent with cases from Texas courts of appeals and federal courts that have
subjected booking questions to the should-have-known test and "encourages law enforcement
officers to violate the rights of accused persons by simply recasting incriminating questions
as 'booking questions.'" In his view, an objective should-have-known test must also apply
because consideration of an officer's subjective intent and good faith is inconsistent with the
Supreme Court's rejection of subjective inquiries in other areas of criminal law. (15)

The State counters that appellant's interpretation "reduces the booking exception to
a nullity" and would unduly burden booking officers, who require a clear rule to enable
efficient and consistent processing of arrestees. (16) Instead, it proposes its own objective test
based on its interpretation of the plurality's "designed to elicit" language: A reviewing court
must objectively "examine the questions as an abstract matter to determine whether it belongs
in the universe of booking questions." It concludes that booking questions are "always
proper" and, therefore, whether the exception applies "is an abstract issue that is unrelated
to the facts of the arrest." Under this standard, what an officer knew or should have known
in a particular case is wholly irrelevant. Alternatively, it argues that "the only way to
preserve something of the booking exception is to employ a subjective review of the officer's
motivation." 

a. Case law supports both parties' positions

i. Texas case law

The State accurately observes that "booking exception cases around the country are
confusing and conflicting." Texas case law is no exception. Although this Court has
acknowledged the existence of a booking-question exception, we have not yet provided
specific guidance on the subject, particularly post-Muniz. In Cross v. State, we stated, in a
footnote, "Questions normally attendant to arrest, custody, or administrative 'booking'
procedure do not constitute 'interrogation' for purposes of Miranda," without further
elaboration. 144 S.W.3d at 525 n.5. 

We also briefly discussed the issue in Ramirez v. State, in which we determined that
questions asked during the booking process regarding the appellant's gang affiliation were
reasonably related to an administrative concern for facility-personnel and inmate safety, but
we did not address the issue of whether the question was likely to elicit an incriminating
response. Ramirez v. State, No. AP-75,167, 2007 Tex. Crim. App. Unpub. LEXIS 610 (Tex.
Crim. App. Dec. 12, 2007) (not designated for publication), cert denied, Navarro-Ramirez
v. Texas, 555 U.S. 831, *46 (U.S. 2008). (17) This appears to be the only case in which this
Court has directly analyzed and applied the booking-question exception, but, as an
unpublished opinion, it has no precedential value. Id.; see also Tex. R. App. P. 77.3
("Unpublished opinions have no precedential value and must not be cited as authority by
counsel or by a court."). Furthermore, Ramirez does not address the Muniz-plurality "design"
language nor does it explain the standard of review applicable in determining whether a
question properly fits within the exception. Id. at *43-47.

 Texas courts of appeals have varied widely in their interpretation and application of
the exception. At least one intermediate court has, like Ramirez, affirmed the trial court's
admission of an appellant's statements during the booking process regarding his gang
affiliation. Pierce v. State, 234 S.W.3d 265, 272 (Tex. App.--Waco 2007, pet. ref'd). 
However, that court implied that its holding was conditioned on "the absence of evidence
that the offense for which Pierce was in custody was gang-related," suggesting that the
inquiry is not purely abstract and unrelated to the facts of the offense. Id. Yet other
intermediate courts have exempted from Miranda booking questions that were related to the
offense for which an appellant was in custody, suggesting that an appellate court merely
determines whether a question reasonably relates to a legitimate administrative concern
without consideration of the facts. (18) Still others have implicitly subjected a booking question
to the should-have-known test in deciding the admissibility of booking statements. (19) And
another has considered only whether the officer actually intended to elicit an incriminating
response. (20) As a result, both appellant's and the State's assertions find support in our State's
jurisprudence. (21)

ii. Case law from other jurisdictions

The conflict within Texas's booking-exception case law also exists within other
states' and federal case law on the subject. Many courts have held, as appellant advocates,
that routine administrative questions are not Miranda exempt if questioning officers should
have known that the question was likely to yield incriminating information. (22) Several of
these courts have reached this conclusion--as appellant seems to have--by simply reading
out any distinction between the Muniz-footnote "design" language and the Innis test,
applying the latter to all custodial inquiries regardless of their potential administrative
function. See Hughes, 695 A.2d at 139-40 (applying Innis test, but noting that some courts
"have defined the routine booking question exception in the language of Muniz, but have
then employed the Innis-based standard as if the two formulations were interchangeable"). (23) 
 Still, myriad other courts have interpreted Innis and Muniz, either explicitly or
implicitly, as creating an exception to Miranda requirements wholly independent of a should-have-known inquiry. In United States v. Gaston, for example, the accused was present when
officers arrived at a house to execute a search warrant. 357 F.3d 77, 81 (D.C. Cir. 2004), cert
denied, 541 U.S. 1091 (2004). Officers detained appellant, and as they commenced their
search, an officer asked appellant for "his name, address, date of birth, and social security
number" without Mirandizing him. Id. Appellant provided the address of the home being
searched and indicated that he co-owned the house. Id. Holding the response admissible, the
D.C. Circuit explained that

officers asking routine booking questions "reasonably related to the police's
administrative concerns" are not engaged in interrogation within Miranda's
meaning and therefore do not have to give Miranda warnings. Gaston's
address and ownership interest in the house also related to "administrative
concerns." The questions dealt as much with record-keeping as the similar
booking questions asked in Muniz.


Id. (quoting Muniz, 496 U.S. at 601-02). Therefore, despite that the questions were likely to
elicit an incriminating response given the circumstances surrounding the questioning, their 

legitimate administrative function rendered them Miranda exempt. See id. (24) 

By contrast, many courts have interpreted Muniz's "designed to elicit" language as
precluding only questions that were, in fact, intended to elicit incriminating information. See
United States v. Virgen-Moreno, 265 F.3d 276, 293-94 (5th Cir. 2001) (observing that
"questions designed to elicit incriminatory admissions are not covered under the routine
booking question exception," holding that record "obviously" revealed that agents' otherwise
routine booking questions were actually intended to elicit incriminating information), cert
denied, 534 U.S. 1095 (2002). (25) One federal court explained that judicial inquiry as to
whether a question is "a disguised attempt at an investigatory interrogation" is "not
meaningfully different" from the language "in footnote 14 in Muniz, which speaks of
questions that are 'designed to elicit incriminating admissions.'" Velasquez v. Lape, 622 F.
Supp. 2d 23, 24 (S.D.N.Y. 2008) (internal citations omitted). Under this standard, a routine
booking question is admissible subject only to a finding that the questioner actually
possessed an interrogative intent. 

 C. Exception Applies if Question Reasonably Relates to a Legitimate
Administrative Concern Regardless of What Officer Should Have Known


 After considering the diverse interpretations of the booking-question exception, we
conclude that, in deciding the admissibility of a statement under the exception, a trial court
must determine whether the question reasonably relates to a legitimate administrative
concern, applying an objective standard. An appellate court reviews this determination de
novo, as its resolution generally will not turn on an evaluation of credibility and demeanor. 
See Guzman, 955 S.W.2d at 89 ("[A]ppellate courts may review de novo 'mixed questions
of law and fact'" if resolution of those questions does not turn "on an evaluation of
credibility and demeanor."). (26) However, if a determination requires resolution of disputed
facts, an appellate court must defer to the trial court's findings as to those facts if supported
by the record and review de novo whether the question was, objectively, reasonably related
to an administrative interest. See id. 

1. Determining whether a question is, objectively, a booking question
without imposing a should-have-known standard gives Supreme
Court precedent effect and avoids an absurd result 


We decline to adopt appellant's proposed application of the exception because, as the
State observes, it renders the exception a nullity: It subjects all custodial questions,
"booking" or otherwise, to the should-have-known test. Under appellant's application,
therefore, no exception actually exists. What would be the purpose of asking whether a
question is a "booking question" if, regardless of the answer, admissibility of the response
ultimately turns on whether the question was reasonably likely to elicit an incriminating
response? This is an absurd reading of Muniz, which cannot reasonably be interpreted as
intending to negate, in a single footnote in the analysis, the exception it had set forth in that
same analysis. 

 Furthermore, appellant's interpretation disregards language in Innis, which expressly
excluded from the definition of custodial interrogation questions that are "normally attendant
to arrest and custody." Innis, 446 U.S. at 301. That language gave rise to the booking-question exception by indicating that routine administrative questions necessary for booking
processing do not constitute interrogation, regardless of whether police should know that 

such questions are reasonably likely to elicit incriminating information. (27) See id.; see also
Velasquez v. Lape, 622 F. Supp. 2d 23, 33 (S.D.N.Y. 2008) (declining to interpret that
language in Innis as "meaningless surplusage" and rejecting defendant's argument that "the
only logical interpretation of this [language] is that un-Mirandized routine pedigree
questioning is permitted because, ordinarily, such questions are not reasonably likely to elicit
an incriminating response.") (emphasis deleted). 


 2. Administrative efficiency and safety

In addition to being a more logical interpretation of the exception, we agree with the
State that limiting judicial analysis to determining whether a question is, objectively,
reasonably related to a legitimate administrative concern has the added benefit of affording
law-enforcement personnel a sphere in which to quickly and consistently administer booking
procedures without having to analyze each question to determine if it is likely to elicit an
incriminating response. This standard will enable officers to obtain information that will help
ensure the safety of facility personnel and other inmates, as well as the suspect. See United
States v. Reyes, 225 F.3d 71, 77 (1st Cir. 2000) (observing that, although suspects
"sometimes feel tempted to lie about even such basic" biographical information, courts
cannot ask law-enforcement agents to "forego all routine procedures and detain an individual
without knowing anything about him, not even what to call him in the jail log."). 

 3. Applicable standard of review

We conclude that a trial court must examine whether, under the totality of the
circumstances, a question is reasonably related to a legitimate administrative concern. An
appellate court generally reviews de novo the objective reasonableness of a question's stated
administrative purpose, but defers to the trial court's resolution of disputed facts. See
Guzman, 955 S.W.2d at 89. If a question lacks a legitimate administrative purpose, the
appellate court should apply the Guzman bifurcated standard of review to determine the
admissibility of the response under the general should-have-known test for custodial
interrogation. See id.; Ripkowski, 61 S.W.3d at 381-82. III. Analysis

Turning to the facts of this case, we must decide whether Officer Ramirez's question
regarding ownership of the flash drive was, objectively, reasonably related to a legitimate
administrative interest.

The government has a legitimate interest in identification and storage of an inmate's
property. Accordingly, the Texas Administrative Code requires that "[u]pon intake, a file
on each inmate shall be established," which "shall include inmate property inventory." 37
Tex. Admin. Code § 265.4(a)(11). The Code then provides that "[t]he receiving officer shall
carefully record and store the inmate's property as it is taken." Id. at § 265.10; see also
Gaston, 357 F.3d at 82 ("In order to comply with [Fed. R. Crim. P.] Rule 41, the officers
sought to find out who owned the house."). The Supreme Court has also held, in the Fourth
Amendment context, that "it is reasonable for police to search the personal effects of a person
under lawful arrest as part of the routine administrative procedure at a police station house
incident to booking and jailing the suspect." Illinois v. Lafayette, 462 U.S. 630, 643 (1983). (28) 

In this case, the record undisputedly shows that, as appellant was being booked into
the jail, Officer Ramirez asked appellant if the non-contraband item discovered in the patrol
car belonged to him. Upon confirming that it did, Officer Ramirez gave the item to facility
personnel, who placed it with appellant's personal property for safekeeping. Based on our
de novo review of the record, we find that the totality of the circumstances objectively show
that Officer Ramirez's questions were reasonably related to a legitimate administrative
concern. See Muniz, 496 U.S. at 601-02. 

IV. Conclusion

We hold that the trial court did not err in admitting appellant's statements under the
booking-question exception to Miranda. Therefore, we affirm the judgment of the court of
appeals.


Filed: February 8, 2012 


Publish 
1. 
[1] Miranda v. Arizona, 384 U.S. 436 (1966).
2. Art. 38.22 § 3(a)(2) provides, in relevant part, "No oral or sign language statement of an
accused made as a result of custodial interrogation shall be admissible against the accused in a
criminal proceeding unless . . . prior to the statement," the accused is given the warning in art. 38.22
§ 2(a), which includes that (1) the accused has the right to remain silent; (2) any statement he makes
may be used against him; (3) he has the right to a lawyer; (4) he has the right to an appointed lawyer
if he cannot employ one; and (5) he has a right to terminate the interview at any time. See Tex. Code
Crim. Proc. art. 38.22 §§ 2(a) & 3(a)(2).
3. Art. 38.23(a) provides, "No evidence obtained by an officer or other person in violation of
any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of
the United States of America, shall be admitted in evidence against the accused on the trial of any
criminal case." Tex. Code Crim. Proc. art. 38.23(a).
4. He confirmed that no one else had been in the patrol car since he had inspected it.
5. [5] The booking search also revealed $317 on appellant's person, which was collected as
evidence.
6. 
[6] Although art. 38.22 § 6 requires that the trial court enter written findings of fact and
conclusions of law, we have held that a trial court satisfies that requirement if it "dictates its findings
and conclusions to the court reporter, and they are transcribed and made a part of the statement of
facts, filed with the district clerk and made a part of the appellate record." Murphy v. State, 112
S.W.3d 592, 601 (Tex. Crim. App. 2003); see also Parr v. State, 658 S.W.2d 620, 623 (Tex. Crim.
App. 1983). The findings "need not be made with minute specificity as to every alleged and
hypothetical possibility for physical or mental coercion, but need only be sufficient to provide the
appellate court and the parties with a basis upon which to review the trial court's application of the
law to the facts." Nichols v. State, 810 S.W.2d 829, 831 (Tex. App.--Dallas 1991, pet. ref'd). In this
case, the findings contained in the record are sufficient to enable the parties to fully address, and the
appellate courts to review, the trial court's ruling and, therefore, satisfy art. 38.22. See Alford, 333
S.W.3d at 360 (noting that the trial court found that the exchange involved "'two quick questions
that resulted in someone's personal property being placed in the personal property bag.'").
7. 
[7] It is readily apparent from the context of all of the trial judge's statements that he intended
to say that although appellant was in custody at the time of questioning, the trial judge was finding
that the questioning was not custodial interrogation.
8. 
[8] On appeal, appellant alleges violations of arts. 38.22, § 2(a) and 38.23(a), arguing that the
officer's questioning constituted "custodial interrogation" under § 2(a), as defined by Miranda.
Appellant's arguments, however, do not distinguish between the requirements in the Texas Code of
Criminal Procedure and Miranda and focus solely on judicial interpretation of "custodial
interrogation" as used in Miranda. We limit our analysis accordingly. See Herrera v. State, 241
S.W.3d 520, 526 (Tex. Crim. App. 2007) ("The warnings provided in Section 2(a) are virtually
identical to the Miranda warnings" and "are required only when there is custodial interrogation" as
construed in Miranda.). 
9. We refer to the Innis test as the "should-have-known test."
10. 
[10] See also Jones v. State, 795 S.W.2d 171, 172 (Tex. Crim. App. 1990) ("[W]e hold the police
questioning incident to the videotaped sobriety test was 'activity normally attendant to arrest and
custody' of a DWI suspect, not 'interrogation.'"); McGinty v. State, 723 S.W.2d 719, 722 (Tex.
Crim. App. 1986) (holding that refusal to submit to breathalyzer test did not result from custodial
interrogation).
11. 
[11] Four justices concurred on other grounds (concluding that the responses at issue were
nontestimonial) without explicitly addressing the existence of a booking exception. See id. at 608
(Rehnquist, C.J., concurring) (deciding it was "unnecessary to determine whether the questions fall
within the 'routine booking question' exception to Miranda Justice Brennan recognizes"). Justice
Marshall concurred and dissented. Id. at 608 (Marshall, J., concurring and dissenting).
12. 
[12] See also Presley v. City of Benbrook, 4 F.3d 405, 408 n.2 (5th Cir. 1993) ("In the wake of
Muniz, it has been universally accepted by courts, both federal and state, that a routine booking
question exception to the Fifth Amendment exists."); Thomas v. United States, 731 A.2d 415, 421
(D.C. Cir. 1999) (collecting cases). 
13. 
[13] See also United States v. D'Anjou, 16 F.3d 604, 609 (4th Cir. 1994) (questions regarding
suspect's nationality and address); United States v. Dougall, 919 F.2d 932, 935 (5th Cir. 1990)
(name, social security number, birth date, birth place, height, weight, and address); United States v.
Washington, 462 F.3d 1124, 1133 (9th Cir. 2006) (gang moniker and gang affiliation); United States
v. Snow, 82 F.3d 935, 943 (10th Cir. 1996) (fingerprinting and signing the fingerprint card).
14. 
[14] See also Sims v. State, 735 S.W.2d 913, 918 (Tex. App.--Dallas 1987, pet. ref'd) (questions
as to what and when appellant last ate and asking appellant to state the date, day, and time were
interrogation); United States v. Downing, 665 F.2d 404, 405 (1st Cir. 1981) (inquiring about purpose
of keys retrieved from appellant's pocket and location of airplane that directly led to discovery of
incriminating evidence); United States v. Mata-Abundiz, 717 F.2d 1277, 1280 (9th Cir. 1983)
(inquiring into defendant's citizenship ten days after initial arrest and after "a true booking had
already occurred" and done by officer from agency that did "not ordinarily book suspects" alien);
United States v. Guess, 756 F. Supp. 2d 730, 742 (E.D. Va. 2010) (asking whether defendant owned
a vehicle not a booking question because not necessary to "fill out appropriate booking paperwork
or comply with required booking procedures"); Hughes v. State, 695 A.2d 132, 141 (Md. 1997)
(questions as to appellant's "narcotics or drug use" not administrative).
15. 
[15] Appellant cites several areas of law requiring objective judicial inquiry, including search-and-seizure law, Brady analysis, and the public-safety exception to Miranda. See Michigan v. Bryant,
131 S.Ct. 1143, 1156 n.7 (2011) (discussing Court's rejection of subjective inquiries in other
criminal-law contexts).
16. 
[16] The State cites Supreme Court precedent describing the need for clarity of constitutional rules
and ease of application. See, e.g., Minnick v. Mississippi, 498 U.S. 146, 151 (1990); Davis v. United
States, 512 U.S. 452, 460-62 (1994).
17. 
[17] In that case, the appellant complained that booking questions as to his gang affiliation were
interrogation under Miranda. Ramirez, No. AP-75,167, 2007 Tex. Crim. App. Unpub. LEXIS 610,
at *43. The booking officer testified that "he routinely asks prisoners about their gang affiliation
'[s]o that we won't put them with a rival gang if they are gang-related' because 'a fight would
happen' and '[s]omebody would get hurt.'" Id. at *46. We concluded that the question "was one
normally attendant to the administrative booking procedure and was necessary to secure the safety
of inmates and employees at the county jail." Id. Citing Cross and Muniz, we held that, because the
inquiry was "a routine booking question as opposed to a custodial interrogation," Miranda warnings
were not required. Id. at *45-46. 
18. 
[18] See Smith v. State, No. 01-09-00263-CR, 2010 Tex. App. LEXIS 8182, *10 (Tex.
App.--Houston [1st Dist.] Oct. 7, 2010, no pet.) (mem. op., not designated for publication) (asking
suspect whether he owned car that officer knew had been used in robbery was Miranda exempt
because "attendant to an administrative 'booking' procedure).
19. 
[19] See Salazar v. State, No. 03-08-00164-CR, 2009 Tex. App. LEXIS 8316, *6-7 (Tex.
App.--Austin Oct. 29, 2009, pet. ref'd) (mem. op., not designated for publication) (noting that
questions that "police should know are reasonably likely to elicit an incriminating response"
constitute interrogation and holding that officer's administrative question admissible because it
"could not be considered reasonably likely to elicit an incriminating response.").
20. 
[20] See Dickson v. State, No. 05-03-01284-CR, 2005 Tex. App. LEXIS 4151, *14-15 (Tex.
App.--Dallas May 27, 2005, no pet.) (mem. op., not designated for publication) (while executing
search warrant on residence, officer asked appellant his "real name" and confirmed that his address
was the residence being searched; affirmed because question was one "normally attendant to arrest
and custody and was not intended to elicit an incriminating response."). 
21. Although the above-cited unpublished cases have no precedential value, we cite them, not
as authority, but merely to demonstrate the conflict among the intermediate courts. See Tex. R. App.
P. 77.3; see also Mays v. State, 318 S.W.3d 368, 379 (Tex. Crim. App. 2010) (citing unpublished
opinions, not as authority, but merely to demonstrate how this Court and other courts have
interpreted and applied constitutional law).
22. 
[22] See, e.g., United States v. Rodriguez, 356 F.3d 254, 260 (2d Cir. 2004) (determining
whether officers "knew or should have known that evidence for an eventual prosecution would
emerge" from administrative questioning); United States v. Pacheco-Lopez, 531 F.3d 420, 423-24
(6th Cir. 2008) ("This 'booking exception' to Miranda requires the reviewing court to carefully
scrutinize the facts, as [e]ven a relatively innocuous series of questions may, in light of the factual
circumstance and the susceptibility of a particular suspect, be reasonably likely to elicit an
incriminating response.") (internal quotations omitted); Mata-Abundiz, 717 F.2d at 1280 ("If the
[routine booking] questions are likely to elicit an incriminating response in a particular situation, the
exception does not apply. . . . The test is objective. The subjective intent of the agent is relevant but
not conclusive.").
23. [23] See also People v. Rodney, 648 N.E.2d 471, 474 (N.Y. 1995) (exception inapplicable "if the
questions, though facially appropriate, are likely to elicit incriminating admissions because of the
circumstances of the particular case," but citing Muniz-plurality footnote); Thomas, 731 A.2d at 423
n.12 (noting that "[t]he articulation of the relevant test in Hughes and Rodney [supra] differs
somewhat from the Muniz plurality's 'designed to elicit incriminatory admissions,' but is consistent
with the Supreme Court's observation in [Innis] that 'a practice that the police should know is
reasonably likely to evoke an incriminating response from a suspect thus amounts to
interrogation.'"); United States v. Reyes, 225 F.3d 71, 76-77 (1st Cir. 2000) ("Although phrased in
terms of the officer's intention, the inquiry into whether the booking exception is thus inapplicable
is actually an objective one: whether the questions and circumstances were such that the officer
should reasonably have expected the question to elicit an incriminating response."); United States
v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996) (citing Muniz footnote, but applying Innis test);
United States v. Minkowitz, 889 F. Supp. 624, 627-28 (E.D.N.Y. 1995) (same).
24. [24] See also United States v. Gotchis, 803 F.2d 74, 79 (2d Cir. 1986) ("since procurement of
employment data would in most instances be as innocent and as useful for purposes of booking and
arraignment as procurement of data about a suspect's marital status, we decline to create an
exception forbidding routine questions about employment when the defendant is suspected of intent
to distribute drugs."); United States v. Blackwood, 904 F.2d 78 (D.C. Cir. 1990) (not designated for
publication), cert. denied, Crossfield v. United States, 498 U.S. 906 (U.S. 1990) (rejecting
appellants' argument "that in the unique context of a 'crack house' arrest, otherwise routine
questions concerning an arrestee's place of residence should not be excepted from Miranda because
they are likely to elicit incriminating information" because the "questions were of a type ordinarily
innocent of any investigative purpose"). 
25. [25] See also United States v. Carmona, 873 F.2d 569, 573 (2d Cir. 1989) (no error where
questions not "intended . . . to elicit a confession or incriminating information. The police meant
only to gather ordinary information for administrative purposes."); Nicholas v. Goord, 430 F.3d 652,
680 (2d Cir. 2005) (Lynch, J., concurring) ("questions aimed at eliciting identifying or 'pedigree'
information [are] permitted without warnings, even though the answers to such questions may
become evidence either of the particular crime for which the suspect was arrested, or of some past
or future crime not yet under investigation."); United States v. Broadus, 7 F.3d 460, 464 (6th Cir.
1993) (routine booking questions are not interrogation "absent evidence that the police used the
booking questions to elicit incriminating statements from the defendant") (internal quotations
omitted); Timbers v. Commonwealth, 503 S.E.2d 233, 238 (Va. App. 1998) (booking exception
inapplicable when officer's question was "designed to elicit" incriminating statements: officer "did
not confront appellant in the holding cell to clarify an ambiguity in her statements made during
booking; rather, he sought to investigate what he believed to be false information."). 
26. See also United States v. Gaston
, 357 F.3d 77, 87 (D.C. Cir. 2004) (Rogers, J., concurring)
(noting that reviewing court "must scrutinize the administrative need for the questions, applying an
objective standard"). 
27. Appellant does not assert that Officer Ramirez actually intended to elicit incriminating
admissions in questioning appellant. We, therefore, do not reach the question as to whether there
is any limitation to the booking exception when an officer's actual intent was to elicit incriminating
admissions through questions characterized by the officer as booking questions. See, e.g., United
States v. Parra, 2 F.3d 1058, 1068 (10th Cir. 1993) (officer did "not question Sotelo to obtain
general booking information. Rather, he questioned Sotelo about his true name for the direct and
admitted purpose of linking Sotelo to his incriminating immigration file."); see also Corbin v. State,
85 S.W.3d 272, 280 (Tex. Crim. App. 2002) (Cochran, J., concurring) (quoting Wayne R. LaFave,
Search and Seizure: A Treatise on the Fourth Amendment § 6.6(a), at 706 (3d ed. 1996)
(noting that, with invocation of emergency doctrine, "it is essential that courts be alert to the
possibility of subterfuge, that is a false claim of such a purpose where the true intent is to seek
evidence of criminal conduct.")). 
28. [28] The Court explained that 


A range of governmental interests supports an inventory process. It is not unheard of
for persons employed in police activities to steal property taken from arrested
persons; similarly, arrested persons have been known to make false claims regarding
what was taken from their possession at the station house. A standardized procedure
for making a list or inventory as soon as reasonable after reaching the station house
not only deters false claims but also inhibits theft or careless handling of articles
taken from the arrested person.


Lafayette, 462 U.S. at 646. It concluded that "[e]xamining all the items removed from the arrestee's
person or possession and listing or inventorying them is an entirely reasonable administrative
procedure." Id.